# EXHIBIT A

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMI HABIB, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FASTLY, INC., JOSHUA BIXBY, and ADRIEL LARES, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>**CLASS ACTION**</u> |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The allegations in this Securities Class Action Complaint ("Complaint")[1] are based on the personal knowledge of Rami Habib ("Plaintiff"), as to Plaintiff's own acts, and are based upon information and belief as to all other matters alleged herein. Plaintiff's information and belief is based upon the investigation by Plaintiff's counsel into the facts and circumstances alleged herein, including: (i) review and analysis of public filings of Fastly, Inc. ("Fastly" or the "Company") made with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (ii) review and analysis of press releases, analyst reports, public statements, news articles, and other publications disseminated by or concerning Fastly and the other defendants named herein (together with Fastly, "Defendants"); (iii) review and analysis of Company conference calls, press conferences, and related statements and materials; and (iv) review and analysis of other documents. Many additional facts supporting the allegations are known only to the Defendants and/or are within their exclusive custody or control. Plaintiff believes that additional evidentiary support for the allegations will emerge after a reasonable opportunity to conduct discovery.

## NATURE OF THE ACTION

1. Subject to certain exclusions, this is a federal securities class action brought on behalf of a class consisting of all persons or entities who purchased or otherwise acquired Fastly securities between May 6, 2020 and August 5, 2020, inclusive (the "Class Period") and were damaged thereby, seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder (the "Class").

2. Fastly is the provider of an edge cloud platform. Fastly's edge cloud platform purportedly enables "customers to create great digital experiences quickly, securely, and reliably by processing, serving, and securing [its] customers' applications as close to their end-users as possible."

---

[1] All internal citations and quotations are omitted and all emphases are added unless otherwise noted.

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

3.  On August 5, 2020, after market close, Fastly held its second quarter ("Q2") 2020 earnings conference call. During the call, Defendants disclosed that ByteDance, the Chinese company that operates the wildly popular mobile app TikTok, was Fastly's largest customer in Q2 2020, and that TikTok represented about 12% of Fastly's revenue for the six months ended June 30, 2020.

4.  This news shocked the market, as TikTok had been under heavy scrutiny by U.S. officials and others since at least late 2019 due to fears that the data it collects from its users could be accessed by the Chinese government. Indeed, on July 31, 2020, President Trump announced a plan to ban TikTok in the U.S. over national security concerns. As Fastly's Chief Executive Officer ("CEO") admitted on the Q2 2020 earnings call, "any ban of the TikTok app by the US would create uncertainty around our ability to support this customer[,]" and "the loss of this customer's traffic would have an impact on our business."

5.  On this news, Fastly's share price fell $19.28 per share, or approximately 17.7% from the previous trading day's closing price of $108.92 per share, to close at $89.64 per share on August 6, 2020. Fastly's shares continued to decline on August 6, 2020, when President Trump issued an executive order effectively banning TikTok, declining another $10.31 per share from the closing price on August 6, 2020, or approximately 11.5%, to close at $79.33 per share on August 7, 2020.

6.  During the Class Period, Defendants knowingly and/or recklessly made false and/or misleading statements about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that Fastly's largest customer was ByteDance, operator of TikTok, which was known to have serious security risks and was under intense scrutiny by U.S. officials; (ii) that there was a material risk that Fastly's business would be adversely impacted should any adverse actions be taken against ByteDance or TikTok by the U.S. government; and (iii) that, as a result, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

7. As the truth was revealed, the price of Fastly securities declined and Plaintiff and the Class suffered losses and were directly and proximately damaged thereby.

## JURISDICTION AND VENUE

8. This action arises under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

9. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

10. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as certain of the acts and conduct complained of herein, including the dissemination and/or omission of materially false and/or misleading information to the investing public occurred in this District. In addition, Fastly maintains its principal executive offices in San Francisco, California.

11. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, the Internet, and the facilities of the national securities markets.

## PARTIES

12. Plaintiff purchased Fastly securities at artificially inflated prices during the Class Period and was damaged thereby when the truth was revealed, as set forth in the attached certification.

13. Defendant Fastly is a Delaware corporation with its principal executive offices located at 475 Brannan Street, Suite 300, San Francisco, California 94107. During the Class Period, Fastly's stock traded on the NYSE under the ticker symbol "FSLY."

14. Defendant Joshua Bixby ("Bixby") was Fastly's CEO at all relevant times.

15. Defendant Adriel Lares ("Lares") was Fastly's Chief Financial Officer at all relevant times.

16. Defendants Bixby and Lares are collectively referred to herein as the "Individual

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. Fastly is the provider of an edge cloud platform. *See* Press Release, *Fastly Announces First Quarter 2020 Financial Results*, Business Wire (May 6, 2020). Fastly's edge cloud platform purportedly enables "customers to create great digital experiences quickly, securely, and reliably by processing, serving, and securing [its] customers' applications as close to their end-users as possible[.]" *Id.*

18. Unbeknowst to investors, Fastly's largest customer during the Class Period was ByteDance, the operator of TikTok. *See* Fastly, Q2 2020 Earnings Call, 2, 16 (Aug. 5, 2020) (transcript on file with Bloomberg L.P.) ("Q2 2020 Earnings Call Tr.").

19. TikTok is a wildly popular app for making and sharing videos that is owned by ByteDance, a Chinese company. *See* David McCabe, *What's Going On With TikTok? Here's What We Know*, N.Y. Times (Aug. 1, 2020).

20. Concerns about TikTok's security have been around for a while. For example, in November 2019, a class action complaint was filed in this District against ByteDance and TikTok alleging that the app contained Chinese surveillance software in violation of, *inter alia*, the Computer Fraud and Abuse Act. *See Hong v. ByteDance, Inc., et al.*, No. 5:19-cv-07792-SVK (N.D. Cal. Nov. 27, 2019), ECF No. 1.

21. The app has also been in U.S. officials' cross-hairs since at least October 2019, when lawmakers on both sides of the aisle warned that the app could pose a national security risk and called on regulators and intelligence agencies to investigate TikTok's ties to China. *See* Sherisse Pham, *TikTok could threaten national security, US lawmakers say*, CNN Business (Oct. 25, 2019). Several U.S. government agencies, including the Transportation Security Administration and the Navy, banned

4

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

TikTok from government devices in late 2019 and early 2020, citing security concerns. *See* Mary Meisenzahl, *U.S. government agencies are banning TikTok . . . .*, Business Insider (Feb. 25, 2020).

22. On July 31, 2020, President Trump dealt a major blow to TikTok, announcing that he plans to ban TikTok from operating in the U.S. *See* Ellen Nakashima et al., *Trump says he plans to bar TikTok from operating in the U.S.*, Wash. Post (July 31, 2020). Specifically, the plan arose due to concerns among U.S. officials that the Chinese government could access U.S. TikTok users' private data. *Id.*

**Materially False and Misleading Statements Issued During the Class Period**

23. The Class Period begins on May 6, 2020. On that day, the Company filed a Form 8-K signed by defendant Lares with the SEC, attaching Fastly's Shareholder Letter for the first quarter ("Q1") 2020. In the letter, the Company and Lares touted Fastly's "Strong top-line growth with revenue of $63 million, up 38% year-over-year[,]" "Total enterprise customer count of 297, up from 288 in Q4 2019[,]" "Average enterprise customer spend of approximately $642,000, up from $607,000 in Q4 2019[,]" and that "Enterprise customers generated 88% of our trailing twelve-month total revenue, up from 87% in Q4 2019[.]"

24. The Company and Lares continued:

> ***Turning to the quarter -- we delivered solid results. We generated $63 million in revenue, up 38% year-over-year, and increased our enterprise customer count to 297 from 288 in the previous quarter. We continued to drive expansion within our customer base with a DBNER of 133% and our average enterprise customer spend continued to increase to $642,000 from $607,000 in the previous quarter.*** These results were primarily driven by continued strong business fundamentals and further adoption of our edge cloud platform by enterprise organizations across multiple verticals and geographies, including high margin verticals such as FinTech and ecommerce. Additionally, this momentum was supplemented by increased internet usage as social distancing measures were implemented in the second half of March. Suffice it to say, the internet and our business are thriving, in part due to our ability to serve as a trustworthy partner for innovative enterprises around the globe.
>
> Fastly is the platform of choice for innovators. We partner with the most technologically advanced and creative companies who we believe will not only weather this storm, but will continue to thrive in this environment. Companies are increasingly recognizing the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

importance of digital transformation, not only to survive during these uncertain times, but also for long-term success. As we are seeing this trend accelerate and evolve, we believe we are best positioned to partner and grow with these companies as they look for a trustworthy and modern platform. For these reasons, we are even more inspired as we continue building and investing in our network and offerings.

Despite the current global economic uncertainty, *we remain confident in the demand for our mission-critical services and the continued growth of our business in 2020 and the years to come. As such, we have raised guidance for 2020 and expect to make further progress on our path to profitability*.

25. That same day, during the Q1 2020 earnings call, in response to an analyst's question, Defendants stated:

[Analyst]: Great, thanks. And then I'm also wondering if you could unpack maybe your assumptions in Q2 and for the rest of the year in terms of maybe contract re-pricings or customer nonpayments or things related to some of the customer segment feeling pressure? I know it's a small percentage, but are you baking in some assumptions for bad debt or contract, repricings, and things like that?

[Bixby]: Sure. Let me go at that a high level and then I'll hand it off to Adriel I think at a high level, the fact that we are a platform for innovators and the innovators are seeing success in this market because they digitally transformed and built their businesses for exactly these moments. I think that is a very different profile than you'd see in others, but like everyone, there is some exposure, and Adriel has some more would have some more insight into that.

[Lares]: Yeah. Thanks, Joshua, and thanks for asking the question. *Yes, at least at this time we're not seeing anything yet, and to Joshua's point, the majority of the customers that we have on our platform are those innovators, are those sort of larger enterprise customers which makes up the bulk of our revenue and so far, they seem to be in good shape.* There was a slight uptick in DSO but there wasn't anything concerning from a long-term basis, at least what we can see right now. *It is something that we continue to monitor on sort of a weekly basis, daily basis, but at this time, we're not seeing anything, at least concerning, from a sort of the Q2 perspective.*

Fastly, Q1 2020 Earnings Call, 10 (May 6, 2020) (transcript on file with Bloomberg L.P.).

26. On May 8, 2020, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2020 (the "Q1 2020 10-Q") which was signed by the Individual Defendants. In the section titled, "Risk Factors," Defendants stated:

6

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*We receive a substantial portion of our revenues from a limited number of customers, and the loss of, or a significant reduction in usage by, one or more of our major customers would result in lower revenues and could harm our business.*

Our future success is dependent on establishing and maintaining successful relationships with a diverse set of customers. We currently receive a substantial portion of our revenues from a limited number of customers. *For trailing 12 months ended March 31, 2020, our top ten customers accounted for approximately 31% of our revenue*. It is likely that we will continue to be dependent upon a limited number of customers for a significant portion of our revenues for the foreseeable future and, in some cases, the portion of our revenues attributable to individual customers may increase in the future. *The loss of one or more key customers or a reduction in usage by any major customers would reduce our revenues. If we fail to maintain existing customers or develop relationships with new customers, our business would be harme*d.

27.     The Q1 2020 10-Q also provided:

Concentrations of credit risk with respect to accounts receivable are primarily limited to certain customers to which we make substantial sales. Our customer base consists of a large number of geographically dispersed customers diversified across several industries. *To reduce risk, we routinely assess the financial strength of our customers. Based on such assessments, we believe that our accounts receivable credit risk exposure is limited. One customer accounted for 10.5% of revenue for the three months ended March 31, 2020, and 14.6% of the total accounts receivable balance as of March 31, 2020.* No customer accounted for more than 10% of revenue for the three months ended March 31, 2019, or more than 10% of the total accounts receivable balance as of December 31, 2019.

28.     Defendants statements in ¶¶ 23-27, *supra*, were false and/or misleading when made because Defendants knowingly and/or recklessly disregarded the following material fact that they failed to disclose: that Fastly's main customer was ByteDance, operator of TikTok, which was known to have serious security risks and was under intense scrutiny by U.S. officials, and thus Defendants concealed a material risk that Fastly's business would be adversely impacted should any adverse actions be taken against ByteDance or TikTok by the U.S. government.

## The Truth Emerges

29.     On August 5, 2020, after market close, Fastly hosted an earnings call for its Q2 2020 results.  On the call, defendant Bixby revealed for the first time that "ByteDance, the operator of TikTok[,] was [Fastly's] largest customer in the quarter."  Q2 2020 Earnings Call Tr. at 6.  Defendants also suggested on the call that ByteDance was a significant customer in Q1 as well, with defendant Bixby

7

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

stating that "over the last six months, [TikTok] represents just about 12% of revenue, trailing 6 months ending June 30." *Id.* at 6. Defendant Lares echoed Bixby's point in response to an analyst's question about TikTok's contribution to revenues in Q2 2019, stating, "it's 12% of revenue for the last 6 months ending June 30, 2020. Yeah, we have not talked about what it was previous to that." *Id.* at 16. Defendant Bixby admitted that "[a]ny ban of the TikTok app by the US would create uncertainty around our ability to support this customer. While we believe we are in a position to backfill the majority of this traffic in case they are no longer able to operate in the US, the loss of this customer's traffic would have an impact on our business." *Id.* at 2.

30. The market was shocked. On this news, Fastly's share price fell $19.28 per share, or approximately 17.7% from the previous trading day's closing price of $108.92 per share, to close at $89.64 per share on August 6, 2020.

31. That same day, August 6, 2020, President Trump issued an executive order that would take effect in 45 days and prohibit any U.S. company or person from transacting with ByteDance, TikTok's Chinese parent company. *See* Rachel Lerman, *Trump issues executive orders against TikTok and WeChat, citing national security concerns*, Wash. Post (Aug. 7, 2020). The executive order states that TikTok's "data collection threatens to allow the Chinese Communist Party access to Americans' personal and proprietary information – potentially allowing China to track the locations of Federal employees and contractors, build dossiers of personal information for blackmail, and conduct corporate espionage." *Id.*

32. On this news, Fastly's shares continued to decline, dropping another $10.31 per share from the closing price on August 6, 2020, or approximately 11.5%, to close at $79.33 per share on August 7, 2020.

**THE FACTS CONCEALED BY DEFENDANTS CAUSED PLAINTIFF'S LOSS**

33. The true facts regarding ByteDance's status as Fastly's largest customer which were

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

omitted and/or misrepresented by Defendants caused the price of Fastly securities to decline, thereby causing harm to investors. Specifically, on August 5, 2020, after market close, Defendants disclosed that ByteDance was Fastly's largest customer for the second quarter of 2020, that TikTok accounted for 12% of Fastly's revenues for the six-month period ended June 30, 2020, and that any U.S. ban on TikTok would impact Fastly's business. *See* ¶¶ 29-32. As a direct and proximate result, Fastly's share price fell $19.28 per share, or approximately 17.7% from the previous trading day's closing price of $108.92 per share, to close at $89.64 per share on August 6, 2020. The Company's shares continued to decline over the next day's trading session on news that President Trump issued an executive order effectively banning TikTok, dropping $10.31 per share from the previous trading day's closing price, or approximately 11.5% to close at $79.33 per share on August 7, 2020.

34. Until shortly before Plaintiff filed this Complaint, Plaintiff was unaware of the facts alleged herein and could not have reasonably discovered Defendants' misrepresentations and omissions by the exercise of reasonable diligence.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of Plaintiff and all persons and entities who purchased or otherwise acquired Fastly securities during the Class Period, and were damaged thereby, seeking to pursue remedies under the Exchange Act.

36. Excluded from the Class are the Defendants named herein, members of their immediate families, any firm, trust, partnership, corporation, officer, director or other individual or entity in which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors-in-interest or assigns of such excluded persons.

37. The members of the Class are so numerous that joinder of all members is impracticable. During the Class Period, Fastly common stock was actively traded on the NYSE, which is an efficient

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

market. While the exact number of Class members cannot be determined at this early stage, Plaintiff believes that thousands of people held Fastly securities during the Class Period. Record owners and other members of the Class may be identified from records maintained by Fastly or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

38. Plaintiff's claims are typical of the claims of the Class because Plaintiff and all members of the Class were similarly affected by Defendants' unlawful conduct as complained of herein.

39. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action and securities litigation. Plaintiff has no interests that are contrary to or in conflict with those of the Class.

40. Common questions of law and fact exist as to all members of the Class, and predominate over any questions solely affecting individual members of the Class. The questions of law and fact common to the Class include, *inter alia*:

    a)    Whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b)    Whether Defendants' publicly disseminated statements made during the Class Period contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    c)    Whether and to what extent Defendants' material untrue statements and/or omissions of material fact caused the market price of Fastly's securities to be artificially inflated during the Class Period;

    d)    Whether Defendants acted with the requisite level of scienter in omitting and/or misrepresenting material facts;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

e) Whether the Individual Defendants were controlling persons of Fastly;

f) Whether reliance may be presumed pursuant to the fraud-on-the-market doctrine or the *Affiliated Ute* presumption; and

g) Whether Class members have sustained damages, and if so, the proper measure of damages.

41. Plaintiff knows of no difficulty that will be encountered in the management of this action that would preclude its maintenance as a class action.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this action because, among other things, joinder of all members of the Class is impracticable. In addition, since the damages suffered by individual members of the Class may be relatively small, the expenses and burden of individual litigation would make it nearly impossible for members of the Class to bring individual actions.

### *RESPONDEAT SUPERIOR* AND AGENCY PRINCIPLES APPLY

43. Fastly is liable for the acts of the Individual Defendants and other Company officers, directors, employees, and agents under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment or agency with the authority or apparent authority to do so.

44. The scienter of the Individual Defendants and other Company officers, directors, employees, and agents is similarly imputed to Fastly under *respondeat superior* and agency principles.

### CONTROL PERSON LIABILITY

45. The Individual Defendants, because of their positions with Fastly, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants had a duty to promptly disseminate complete, accurate, and truthful

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

information with respect to Fastly's business, prospects and operations. Each of the Individual Defendants was provided with copies of the Company's SEC filings alleged herein to be false or misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, each of the Individual Defendants knew that the adverse facts and omissions specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations and omissions which were being made were then materially false and/or misleading.

### THE FRAUD ON THE MARKET PRESUMPTION

46. The false and/or misleading statements alleged herein were material and public and, at all relevant times, the market for Fastly securities was an efficient market for the following reasons, among others:

  a. Fastly's common stock was listed on the NYSE stock market, a highly efficient market;

  b. As a registered and regulated issuer of securities, Fastly filed periodic reports with the SEC, in addition to the frequent voluntary dissemination of information;

  c. Fastly regularly communicated with public investors through established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures such as communications with the financial press and other similar reporting services;

  d. The market reacted to public information disseminated by Fastly; and

  e. Analysts followed Fastly's business and wrote reports which were publicly available and affected the marketplace.

47. As a result of the above, the market for Fastly's securities promptly digested current

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

information with respect to the Company from all publicly available sources and reflected such information in the securities' market prices. The historical daily trading prices and volumes of Fastly's securities are incorporated herein by reference.

48. The material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to overvalue Fastly's securities. Without knowledge of the misrepresented or omitted facts, Plaintiff and other members of the Class purchased Fastly securities between the time that Defendants made the material misrepresentations and omissions and the time that the truth was revealed, during which time the price of Fastly's securities was artificially inflated by Defendants' misrepresentations and omissions. Thus, a presumption of reliance applies.

### THE *AFFILIATED UTE* PRESUMPTION

49. At all relevant times, Plaintiff and the Class reasonably relied upon Defendants to disclose material information as required by law and in the Company's SEC filings. Plaintiff and the Class would not have purchased or otherwise acquired Fastly securities at artificially inflated prices if Defendants had disclosed all material information as required. Thus, to the extent Defendants wrongfully failed to disclose material facts and information concerning the circumstances surrounding its business, operations, and prospects, or otherwise omitted material facts and information, Plaintiff and the Class are presumed to rely on Defendants' omissions as established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972).

### NO SAFE HARBOR

50. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were not

13
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false and/or misleading; and/or the forward-looking statement was authorized or approved by an executive officer of Fastly who knew that the statement was false when made.

## CAUSES OF ACTION

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

**Against All Defendants)**

51. Plaintiff re-alleges each allegation above as if fully set forth herein.

52. This Count is brought under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against all Defendants.

53. During the Class Period, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder by making the false and misleading statements specified herein, including the statements in SEC filings and conference calls concerning the Company's business, operations, and prospects, whose truth they knowingly or recklessly disregarded when they failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false or misleading.

54. The acts and scienter of the Individual Defendants and other Company employees are imputed to the Company under the principles of agency and *respondeat superior*.

55. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

of conduct to conceal non-public, adverse material information about the Company's business, operations, and prospects as reflected in the misrepresentations and omissions set forth above.

56. Defendants each had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth by failing to ascertain and to disclose such facts even though such facts were available to them, or deliberately refrained from taking steps necessary to discover whether the material facts were false or misleading.

57. As a result of Defendants' dissemination of materially false and misleading information and their failure to disclose material facts, Plaintiff and the Class were misled into believing that the Company's statements and other disclosures were true, accurate, and complete.

58. Plaintiff and other Class members purchased Fastly securities without knowing that Defendants had misstated or omitted material facts about the Company's business, operations, and prospects. In doing so, Plaintiff and other Class members relied directly or indirectly on false and misleading statements made by Defendants, and/or an absence of material adverse information that was known to Defendants or recklessly disregarded by them but not disclosed in Defendants' public statements.

59. Plaintiff and other Class members were damaged as a result of their reliance on Defendants' false and/or misleading statements and misrepresentations and omissions of material facts. Plaintiff and other Class members would not have purchased Fastly securities at the prevailing prices had they known the truth about the matters discussed above.

60. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other Class members have suffered damages in connection with their purchases of Fastly securities.

61. Plaintiff is filing this action within two years after the discovery of the facts constituting the violation, including facts establishing scienter and other elements of Plaintiff's claims, and within five years after the violations with respect to Plaintiff's investments.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## **COUNT II**

### **(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

62. Plaintiff re-alleges each allegation above as if fully set forth herein.

63. This Count is asserted against the Individual Defendants for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), on behalf of all members of the Class.

64. As set forth in Count I, Fastly committed a primary violation of Section 10(b) of the Exchange Act by knowingly and/or recklessly disseminating materially false and misleading statements and/or omissions throughout the Class Period.

65. Each of the Individual Defendants, by reason of their status as senior executive officers and/or directors of Fastly, directly or indirectly, controlled the conduct of the Company's business and its representations to Plaintiff and other Class members, within the meaning of Section 20(a) of the Exchange Act. The Individual Defendants directly or indirectly controlled the content of the Company's SEC filings and other statements related to Plaintiff's and other Class members' investments in Fastly securities within the meaning of Section 20(a) of the Exchange Act. Therefore, the Individual Defendants are jointly and severally liable for the Company's fraud, as alleged herein.

66. The Individual Defendants controlled and had the authority to control the content of the Company's SEC filings and other statements. Because of their close involvement in the everyday activities of the Company, and because of their wide-ranging supervisory authority, the Individual Defendants reviewed or had the opportunity to review these documents prior to their issuance, or could have prevented their issuance or caused them to be corrected.

67. The Individual Defendants knew or recklessly disregarded the fact that Fastly's representations were materially false and misleading and/or omitted material facts when made. In so doing, the Individual Defendants did not act in good faith. By virtue of their high-level positions and their participation in and awareness of Fastly's operations and public statements, the Individual

16

Defendants were able to and did influence and control Fastly's decision making, including controlling the content and dissemination of the documents that Plaintiff and other Class members contend contained materially false and misleading information and on which Plaintiff and other Class members relied.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and statements alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs;

D.      Awarding rescissory damages in favor of Plaintiff and the other Class members where appropriate against all Defendants, jointly and severally, for all injuries sustained as a result of Defendants' wrongdoing, in an amount to be determined at trial, including pre-judgment and post-judgment interest, as allowed by law; and

E.      Awarding such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all triable claims.

Dated:  September 15, 2020                                    Respectfully submitted,

                                                                                   **POMERANTZ LLP**

                                                                                   */s/ Jennifer Pafiti*
                                                                                   Jennifer Pafiti (SBN 282790)
                                                                                   1100 Glendon Avenue, 15th Floor
                                                                                   Los Angeles, California 90024
                                                                                   Telephone: (310) 405-7190
                                                                                   jpafiti@pomlaw.com

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

***Attorneys for Plaintiff***

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS