ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
  – and –
LAURIE L. LARGENT (153493)
CAROLINE M. ROBERT (254293)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
llargent@rgrdlaw.com
crobert@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re FASTLY, INC. SECURITIES LITIGATION | ) ) ) | Case No. 4:20-cv-06024-PJH |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) ) | LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |
| ALL ACTIONS. | ) ) ) | Date:  November 4, 2021 Time:  1:30 p.m. Judge:  Hon. Phyllis J. Hamilton Courtroom:  3 |

4847-7780-7603.v1

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND .......................................................................................2

III.    APPLICABLE LEGAL STANDARDS .......................................................................4

IV.     ARGUMENT ...............................................................................................................5

        A.      The Complaint Is Not a Puzzle Pleading ..........................................................5

        B.      Plaintiff Pleads Actionable Material Misstatements and Omissions ....................6

                1.      Defendants' May and June 2020 Statements Were Materially
                        Misleading and Omitted Material Information ..........................................7

                        a.      Defendants Failed to Disclose that TikTok Was Fastly's
                                Largest Customer and Posed a Significant Material Risk to
                                Fastly's Revenues ........................................................................7

                        b.      The Omitted Information Was Material ........................................9

                        c.      Defendants' Risk Disclosures Failed to Disclose the
                                Material Risks Pertaining to TikTok..............................................10

                2.      Defendants' August Statements Were Materially False and
                        Misleading.................................................................................................12

                3.      The Safe Harbor Provides No Protection....................................................14

                4.      The Statements Are Not Inactionable Statements of Historical
                        Performance ...............................................................................................16

                5.      Defendants' Misrepresentations Were Neither Nonactionable
                        Corporate Optimism nor Opinion ..............................................................16

        C.      The Complaint Alleges a Strong Inference of Scienter ..........................................18

                1.      The Complaint Alleges Defendants' Direct Knowledge of
                        TikTok's Issues Which Posed a Serious Risk to Fastly's Revenues .........19

                2.      Plaintiff's Motive Allegations Further Support a Strong Inference
                        of Scienter ..................................................................................................22

                3.      Defendants' Competing Inferences Fail to Undermine a Strong
                        Inference of Scienter..................................................................................24

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................................................5

*Azar v. Yelp. Inc.,*
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ......................................................................24

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................................5, 12

*Berson v. Applied Signal Tech., Inc.,*
527 F.3d 982 (9th Cir. 2008) ..................................................................................6, 7, 8, 11

*Boston Ret. Sys. v. Uber Techs., Inc.,*
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ........................................................................13

*Brody v. Transitional Hosps. Corp.,*
280 F.3d 997 (9th Cir. 2002) ..................................................................................................8

*Browning v. Amyris, Inc.,*
2014 WL 1285175 (N.D. Cal. Mar. 24, 2014)......................................................................21

*Canada, Inc. v. Qualcomm, Inc.,*
2017 WL 971846 (S.D. Cal. Jan. 27, 2017)..............................................................................6

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
856 F.3d 605 (9th Cir. 2017) ................................................................................................18

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.,*
632 F.3d 751 (1st Cir. 2011)..................................................................................................25

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005)..................................................................................................................4

*Durning v. First Boston Corp.,*
815 F.2d 1265 (9th Cir. 1987) ................................................................................................9

*ESG Cap. Partners, LP v. Stratos,*
828 F.3d 1023 (9th Cir. 2016) ..............................................................................................18

*Evanston Police Pension Fund v. McKesson Corp.,*
411 F. Supp. 3d 580 (N.D. Cal. 2019) ..................................................................................16

*Flynn v. Sientra, Inc.,*
2016 WL 3360676 (C.D. Cal. June 9, 2016) ....................................................................6, 10

**Page**

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)..................................................................................16

*Gammel v. Hewlett-Packard Co.*,
2013 WL 1947525 (C.D. Cal. May 8, 2013) ........................................................................22

*Heavy & Gen. Laborers' v. Fifth Third Bancorp*,
2021 WL 1648117 (N.D. Ill. Apr. 26, 2021) ..........................................................................6

*Hodges v. Akeena Solar, Inc.*,
2010 WL 3705345 (N.D. Cal. May 20, 2010) ......................................................................24

*In re Alphabet, Inc. Sec. Litig.*,
1 F. 4th 687 (9th Cir. 2021) ................................................................................................18

*In re Apple Inc. Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ................................................................6, 8, 16

*In re Connetics Corp. Sec. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008) ...........................................................................16, 17

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ............................................................................................15

*In re CV Therapeutics, Inc.*,
2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) .......................................................................15

*In re Eventbrite, Inc. Sec. Litig.*,
2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ........................................................................8

*In re Fusion-io, Inc. Sec. Litig.*,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ........................................................................15

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005)..................................................................................19

*In re Intuitive Surgical Sec. Litig.*,
65 F. Supp. 3d 821 (N.D. Cal. 2014) ..........................................................................5, 6, 11

*In re Merck & Co., Inc. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005)..................................................................................................9

*In re Netsolve, Inc. Sec, Litig.*,
185 F. Supp. 2d 684 (W.D. Tex. 2001)................................................................................16

**Page**

*In re Nuvelo, Inc., Sec. Litig.*,
   2008 WL 5114325 (N.D. Cal. Dec. 4, 2008) ........................................................................15

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ....................................................................................20, 21

*In re Portal Software, Inc. Sec. Litig.*,
   2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) ..................................................................13, 22

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ....................................................................................14, 17

*In re Questcor Sec. Litig.*,
   2013 WL 5486762 (C.D. Cal. Oct. 1, 2013)..........................................................................24

*In re Rigel Pharms. Inc. Sec. Litig.*,
   2009 WL 5125344 (N.D. Cal. Dec. 21, 2009)..........................................................................6

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) .............................................................................................13

*In re Silvercorp Metals, Inc. Sec. Litig.*,
   26 F. Supp. 3d 266 (S.D.N.Y. 2014)....................................................................................22

*In re Snap Inc. Sec. Litig.*,
   2018 WL 2972528 (C.D. Cal. June 7, 2018) ....................................................................11, 15

*In re Solarcity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) .................................................................................15

*In re Spiegel, Inc. Sec. Litig.*,
   382 F. Supp. 2d 989 (N.D. Ill. 2004) ...................................................................................17

*In re STEC Inc. Sec. Litig.*,
   2011 WL 2669217 (C.D. Cal. June 17, 2011) ..........................................................................7

*In re Time Warner Inc. Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993) .................................................................................................22

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal. 2009) .................................................................................24

*Inchen Huang v. Higgins*,
   443 F. Supp. 3d 1031 (N.D. Cal. 2020) ...............................................................................13

**Page**

*Karinski v. Stamps.com, Inc.*,
  2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ............................................................................6

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...............................................................................4, 6, 7, 12

*Kovtun v. VIVUS, Inc.*,
  2011 WL 4888876 (N.D. Cal. Oct. 13, 2011)...........................................................................6

*Kovtun v. VIVUS, Inc.*,
  2012 WL 4477647 (N.D. Cal. Sept. 27, 2012), *aff'd*,
  *Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015) ........................................................8

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ...............................................................................14, 15

*Markette v. XOMA Corp.*,
  2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ........................................................................18

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011).......................................................................................7, 9, 10

*McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................................13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ...........................................................................................24

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
  761 F.3d 245 (2d Cir. 2014).................................................................................................8

*Miller v. Thane Int'l, Inc.*,
  519 F.3d 879 (9th Cir. 2008) ...................................................................................6, 16

*Mulligan v. Impax Lab'ys, Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) ......................................................................16, 17, 18

*Murphy v. Precision Castparts Corp.*,
  2017 WL 3084274 (D. Or. June 27, 2017) ............................................................................16

*N.M. State Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011) .........................................................................................18, 19

*Nemykina v. Old Navy, LLC*,
  461 F. Supp. 3d 1054 (W.D. Wash. 2020)............................................................................13

**Page**

*Nguyen v. Radient Pharms. Corp.*,
2011 WL 5041959 (C.D. Cal. Oct. 20, 2011)...........................................................................22

*No. 84 Employer- Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ...................................................................................................24

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000).....................................................................................................17

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) .................................................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015).................................................................................................................18

*Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
432 F. Supp. 3d 131 (D. Conn. Sept. 2019).............................................................................23

*Pirani v. Slack Techs., Inc.*,
445 F. Supp. 3d 367 (N.D. Cal. 2020) .....................................................................................11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .................................................................................................17

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) .................................................................................................15

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014) ..............................................................................................21, 22

*Roberti v. OSI Sys., Inc.*,
2015 WL 1985562 (C.D. Cal Feb. 27, 2015)..........................................................................14

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)......................................................................................................23

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ..............................................................................................18, 21

*S.E.C. v. Mozilo*,
2009 WL 3807124 (C.D. Cal. Nov. 3, 2009).............................................................................9

*Schuster v. Symmetricon, Inc.*,
2000 WL 33115909 (N.D. Cal. Aug. 1, 2000) ........................................................................10

**Page**

*SEC v. Bardman*,
    216 F. Supp. 3d 1041 (N.D. Cal. 2016) ....................................................................................18

*SEC v. Cap. Gains Rsch. Bureau, Inc.*,
    375 U.S. 180 (1963) .................................................................................................................4

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009), *aff'd,* 563 U.S. 27 (2011) .......................................................11

*Stocke v. Shuffle Master, Inc.*,
    615 F. Supp. 2d 1180 (D. Nev. 2009) .....................................................................................24

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...................................................................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ....................................................................................................5, 18, 22

*Todd v. STAAR Surgical Co.*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ....................................................................14, 15

*Union Asset Mgmt. Holding AG v. SanDisk LLC*,
    2017 WL 3097184 (N.D. Cal. June 22, 2017) ........................................................................17

*Veal v. Lendingclub Corp.*,
    2020 WL 3128909 (N.D. Cal. June 12, 2020) ..........................................................................8

*W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*,
    2018 WL 4524107 (D. Or. May 29, 2018), *aff'd sub nom.*
    *W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*,
    788 F. App'x 421 (9th Cir. 2019) ...........................................................................................15

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996) ....................................................................................................17

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd,*
    765 F. App'x 239 (9th Cir. 2019) ...........................................................................................13

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017) ...................................................................................................16

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b)................................................................................................................4
   §78t(a).................................................................................................................4
   §78u-4............................................................................................................14, 21
   §78u-4(b)(2).......................................................................................................18
   §78u-5(c)(1).......................................................................................................14

Federal Rules of Civil Procedure
   Rule 9(b) .........................................................................................................5, 13
   Rule 12(b)(6)........................................................................................................5

17 C.F.R.
   §240.10b-5 ..............................................................................................4, 5, 20, 24
   §240.10b-5(b)...................................................................................................5, 20

Lead Plaintiff Andrew Zenoff ("Plaintiff") submits this Opposition to Defendants' Motion to Dismiss Plaintiff's Consolidated Complaint.  ECF No. 70 ("Motion" or "Mot.").[1]

## I.  INTRODUCTION

Desperate to secure much-needed cash through a public stock offering and to fund an acquisition, Defendants misled investors throughout the Class Period about the material risks they faced as a result of the escalating problems their single, largest customer, TikTok, was facing, including a ban of the app in the U.S.  While Defendants touted their roster of prominent tech customers, including social media companies such as Twitter, Pinterest and Reddit, Defendants knowingly withheld that TikTok, the explosive Chinese-owned video-based social media app, was Fastly's top customer and posed a material risk to Fastly's revenues and revenue growth because of U.S. government actions being taken against the app due to national security concerns.  Once Defendants revealed to investors that TikTok was in fact the Company's largest customer and any ban of TikTok could harm Fastly's business, the Company's stock price plunged again.  But, Defendants continued to mislead investors by assuring the market that Fastly could quickly backfill any lost TikTok revenues should a ban take place.  Unbeknown to investors, however, over five weeks prior, TikTok had already begun shifting traffic away from Fastly's platform, as had other enterprise customers on which Fastly depended, and because the supply of available customers was limited, Defendants knew it was impossible for Fastly to make up the lost TikTok revenue.

In moving to dismiss, Defendants only challenge falsity and scienter, improperly inserting their own factual counter-narrative to try to explain away their liability.  But their arguments fail. First, Plaintiff has adequately alleged that Defendants' failure to disclose TikTok was Fastly's largest customer by 1Q20, and the attenuated revenue impact that posed given the escalating action being taken against the app in the U.S., and that by June 2020 TikTok was already reducing its usage of Fastly's platform, made their Class Period statements false and misleading.  Second, Plaintiff has shown that these statements were made with scienter.  In fact, Defendants do not dispute that they knew about TikTok's importance to Fastly's revenue growth, and the growing troubles due to

---

[1]  Unless otherwise noted, all capitalized terms have the meaning given in the Consolidated Complaint for Violations of the Federal Securities laws (ECF No. 68) (the "Complaint.").

national security concerns the app was facing, before they made the alleged misstatements.  Thus, Defendants' motion to dismiss should be denied in its entirety.

## II.    FACTUAL BACKGROUND

Fastly is a cloud-based content delivery network that helps deliver faster service for websites and applications.  ¶¶2, 7.[2]  It has been operating at a loss since its May 2019 initial public offering.  ¶¶4, 123.  The Company generates substantially all of its revenue from charging its customers based on their usage of its platform.  ¶10.  Its revenues depend on a limited number of enterprise customers.  ¶¶12-13, 63.  During the Class Period, Fastly touted the list of its enterprise customers, as including some of the most prominent digital innovators, such as Google, Microsoft, Shopify, Slack, Pinterest, Reddit, Twitter, GitHub, Vimeo and Stripe.  ¶9.  One name was left off that list – that of TikTok, Fastly's secret, largest enterprise customer.  ¶¶32-34.

TikTok is a video sharing app owned by China-based ByteDance.  ¶14.  In 2017, ByteDance acquired U.S.-based social video app Musical.ly, merging it into TikTok.  *Id*.  In the period leading up to the Class Period, TikTok's popularity and growth skyrocketed and so did its usage of Fastly's platform.  ¶¶15-16.  By the end of 1Q20, TikTok accounted for 10.5% of Fastly's revenues (¶¶16, 68) and drove Fastly's 38% year-over-year revenue growth (¶3).

At the same time TikTok was becoming Fastly's single largest customer, the app was at the center of the news due to serious national security concerns sparked by fears that the data it collects from its users could be used by the Chinese government.  ¶17.  U.S. lawmakers were so critical of TikTok that six months prior to the Class Period, CFIUS, an inter-agency committee of the U.S. Government that reviews the national security implications of foreign investments in U.S. companies, began investigating the app.  ¶¶18-19, 22.  CFIUS has far-reaching powers to intervene and block foreign acquisitions.  *Id*.  And under the Trump Administration, it has used its authority to drastically reduce Chinese investments in the U.S., terminating or blocking Chinese companies' purchase of at least six U.S. companies (Lattice Semiconductors, MoneyGram, Qualcomm, Grindr, PatientsLikeMe and StayNTouch).  ¶¶19-21.  As these crackdowns demonstrate, CFIUS's

---

[2]    All "¶__" and "¶¶__" references are to the Consolidated Complaint for Violations of the Federal Securities Laws (ECF No. 68) (the "Complaint").

investigation of TikTok meant that the app was facing a substantial risk of being shut down in the U.S. or of being sold to a U.S. company with a large cloud infrastructure that competes with Fastly. ¶19. Fastly therefore stood to potentially lose its single largest customer. *Id.* This risk only became more significant when three months before the start of the Class Period, at least seven U.S. government agencies had banned TikTok and U.S. officials were introducing legislation to prohibit all federal employees from using the app. ¶¶23-26.

When reporting 1Q20 results, instead of being transparent about the identity of its single largest customer – like it did with its other enterprise customers (¶9) – and the serious geopolitical issues it was facing, Defendants repeatedly highlighted the strength of its enterprise customers (¶¶53-54, 57, 59-60, 68-69). Defendants touted Fastly's 1Q20 performance and the fact that it was driven by its enterprise customers (¶¶53-54, 58, 61, 71), but failed to disclose that its largest enterprise customer was looking at being banned in the U.S. ¶¶3, 32-33, 62, 70, 72. Defendants warned of certain generic and abstract risks (¶¶63-67), but never disclosed that their single largest customer was Chinese and that those general "concerns" had escalated beyond general "trade tensions" with regard to that customer, to U.S. government bans and a serious CFIUS investigation of that customer. ¶¶3, 32-33, 70. Defendants were motivated to conceal this information about TikTok in order to use Fastly's inflated stock price to close on a public stock offering three weeks later and secure critically needed cash. ¶¶4, 34, 121-126. When reporting 2Q20 results, Defendants finally admitted that TikTok had been Fastly's largest customer for the first half of 2020, accounting for 13% of revenues in 2Q20. ¶¶35-36, 73, 83. In response to this news, Fastly's stock price plummeted 17.7%. ¶¶5, 36, 136.

Defendants, however, continued to mislead investors, assuring them that they "are in a position to backfill the majority of [lost] traffic" "at short notice" (¶¶37, 74-75, 81, 92, 94), are assuming "status quo" with regard to TikTok and are seeing "strong growth" for 3Q20 (¶¶37, 76-79, 91, 93, 95). They also again warned investors of certain vague risks (¶¶37, 83-89), including that Fastly's revenues "could" be impacted because of the uncertainty surrounding TikTok's fate in the U.S. (¶¶83, 87). Defendants knew, however, that TikTok had already began moving traffic away from Fastly's platform at the end of 2Q20 in anticipation of a possible U.S. ban; that other enterprise

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 4:20-cv-06024-PJH    - 3 -
4847-7780-7603.v1

customers such as Pinterest, the NY Times, Wayfair and especially Amazon and its gaming subsidiary Twitch.tv had also reduced their usage at the beginning of 3Q20; that Fastly had already turned down many potential customers due to TikTok's previously skyrocketing usage of its platform; and therefore that there was a material risk that Fastly would not be able to quickly replace the lost traffic, and that the Company's 3Q20 and FY 2020 guidance had no reasonable basis.  ¶¶5, 38, 80, 82, 90, 96, 101-105, 113.  Defendants were again motivated to conceal from investors this bad news about TikTok in order to use Fastly's inflated stock price to facilitate a critical acquisition a few weeks later to expand Fastly's security portfolio.  ¶¶39, 127-128.

On October 14, 2020, the true state of affairs at Fastly was revealed when in a pre-announcement, the Company revised its 3Q20 earnings and withdrew its FY 2020 guidance due to a significant loss of TikTok revenue and its inability to backfill that lost revenue.  ¶¶6, 41-42, 97-105.  In response to this news, Fastly's stock price plummeted by almost 30% on the highest trading volume day since it became a public company.  ¶¶99, 140.

## III.   APPLICABLE LEGAL STANDARDS

The federal securities laws were enacted "to substitute a philosophy of ***full disclosure*** for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry." *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186 (1963).[3]  In order to establish a claim of securities fraud under §10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) relied upon by plaintiff; (5) a loss causally connected to the alleged fraud; and (6) economic loss or damages.[4]  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-

---

[3]   Here and throughout, emphasis is added, and internal citations and quotation marks are omitted, unless otherwise noted.

[4]   Defendants' Motion challenges only the elements of falsity and scienter, conceding that Plaintiff has adequately pled the remaining four elements of its §10(b) claim (*i.e.*, purchase of a security, reliance, loss causation and damages).  Defendants' only argument as to the §20(a) claim is that the Complaint fails to allege a "primary violation" under §10(b).  Mot. at 25.  As the Complaint adequately alleges a §10(b) claim, their argument fails.

42 (2005).  Under Rule 10b-5, it is unlawful "to omit to state a material fact necessary in order to make the statements made . . . not misleading."  17 C.F.R. §240.10b-5(b).

In assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "consider the complaint in its entirety," "accept all factual allegations . . . as true" and construe those allegations in the light most favorable to the plaintiff.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007).  A complaint "does not need detailed factual allegations," but need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to Rule 12(b)(6)'s requirements, under Fed. R. Civ. P. 9(b), Plaintiff's omissions and scienter allegations must include "the 'time, place, and specific content of the [misleading statement] as well as the identities of the parties to the [statement].'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

## IV.   ARGUMENT

### A.   The Complaint Is Not a Puzzle Pleading

Defendants are wrong that the Complaint is a puzzle-pleading.  The Complaint lists the alleged misstatements and omissions in a labeled section, "V. Defendants' Materially False and Misleading Statements and Omissions," which includes separate headings for misstatements and omissions made within a particular fiscal quarter or at a particular event.  ¶¶61-105.  Each misstatement includes bold and italicized font to identify the actionable portions of each quote and a narrative to explain the false or misleading portions.  ¶¶52-61, 63-69, 71, 73-79, 81, 83-89, 91-95.  Additionally, the Complaint clearly identifies who made the statement, when the statement was made, and explains in detail why the representations were materially false and misleading when made.  *Id.*; ¶¶62, 70, 72, 80, 82, 90, 96.  No more is needed.

Courts have routinely found this style of pleading permissible.  As in *In re Intuitive Surgical Sec. Litig.*, a case Defendants cite, it is sufficient that Plaintiff "precisely detailed each problematic statement, alleged that each statement is false and misleading, . . . alleged the reasons as to why each

statement was false or misleading [and] highlight[ed] problematic portions of statements," which has been done here.  65 F. Supp. 3d 821, 831 (N.D. Cal. 2014); *see also Flynn v. Sientra, Inc.*, 2016 WL 3360676, at \*9 (C.D. Cal. June 9, 2016); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at \*8 (N.D. Cal. June 2, 2020); *Heavy & Gen. Laborers' v. Fifth Third Bancorp*, 2021 WL 1648117, at \*13 (N.D. Ill. Apr. 26, 2021).[5]

Defendants' puzzle-pleading argument is also inconsistent with their Motion: Defendants claim they cannot identify the alleged misstatements and omissions (Mot. at 1, 9), yet they spend the next 10 pages of their Motion identifying and challenging the misstatements and omissions and arguing that they are not actionable (*id.* at 10-20); *see, e.g.*, *Fifth Third Bancorp*, 2021 WL 1648117, at \*13 ("Defendants' extensive motion to dismiss suggests that they too can adequately follow and understand Lead Plaintiff's allegations."); *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d at 831; *Karinski v. Stamps.com, Inc.,* 2020 WL 281716, at \*9 (C.D. Cal. Jan. 17, 2020).[6]

### B.    Plaintiff Pleads Actionable Material Misstatements and Omissions

Even if a statement is not false, it is misleading if it provides reasonable investors the "'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008); *see also Khoja*, 899 F.3d at 1008-09 (even if technically accurate, a defendant is required to disclose "'adverse information that cuts against the positive information'" if it chooses to tout the positive information).  Statements that are "literally true" may be actionably misleading due to ""'their context and manner of presentation."'" *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008).  A statement is material when the truth would ""'have been viewed by the reasonable investor as having

---

[5]    The cases Defendants cite are inapposite. In *In re Rigel Pharms. Inc. Sec. Litig.*, 2009 WL 5125344 (N.D. Cal. Dec. 21, 2009), and *Kovtun v. VIVUS, Inc.*, 2011 WL 4888876 (N.D. Cal. Oct. 13, 2011) ("*Kovtun I*"), the plaintiffs failed to identify the defendants' material misstatements. And in *Canada, Inc. v. Qualcomm, Inc.*, 2017 WL 971846, at \*14 (S.D. Cal. Jan. 27, 2017), the complaint "lump[ed] several paragraphs of statements together and stat[ed] in conclusory terms why all of the statements are false or misleading."  Further, block quotes were necessary to provide context.  *See Flynn*, 2016 WL 3360676, at \*9.

[6]    For example, Defendants argue that Plaintiff does not contest the accuracy of the statement "'[w]e generated $63 million in revenue.'" Mot. at 9.  Yet, Defendants address its falsity. *Id*. at 13, 15.  Further, contrary to Defendants' contention, Mot. at 9, Plaintiff did not bold and italicize the statement that "[c]ustomers are charged based on the usage of our platform."  ¶66.

significantly altered the 'total mix' of information made available."'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) ("*Matrixx I*"). "'[W]hether a public statement is misleading . . . is a mixed question to be decided by the trier of fact.'" *In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *9 (C.D. Cal. June 17, 2011). It cannot be resolved as a matter of law unless "'the adequacy of the disclosure . . . is so obvious that reasonable minds could not differ.'" *Khoja*, 899 F.3d at 1014-15.

### 1. Defendants' May and June 2020 Statements Were Materially Misleading and Omitted Material Information

#### a. Defendants Failed to Disclose that TikTok Was Fastly's Largest Customer and Posed a Significant Material Risk to Fastly's Revenues

On May 6, 2020 and June 2, 2020, Defendants touted (1) the strength of Fastly's enterprise customers, including their "good shape," "stability," ability to "continue to thrive," the "limited" credit risk exposure they posed, and the fact that they didn't present "anything major" or "concerning" (¶¶53-54, 57, 59-60, 69); (2) the "stronger demand" for Fastly's platform, including enterprise customers' "usage expansion" (¶¶54, 58, 61); and (3) its enterprise customers driving revenue growth and "continued strong business fundamentals" (¶¶53-54, 69, 71).

These statements were false and misleading because, unbeknown to investors, Fastly's single largest customer, representing 10.5% of Fastly's revenue, was TikTok, an app that had already been banned by many U.S. government agencies and was under CFIUS investigation as a national security risk, which meant that TikTok's U.S. operations could be shut-down or sold to a Fastly competitor. ¶¶17-26, 62, 70, 72. Having chosen to tout the strength, demand and usage of Fastly's enterprise customers and their driving Fastly's 1Q20 performance, Defendants were required to disclose that their single largest customer faced very concerning, and real geopolitical issues, with possible shut-down, which put the Company's "continued" revenue growth at serious risk given that TikTok was a large contributor to that growth. *See Berson*, 527 F.3d at 987 (once defendants touted backlog reports, they were required to do so in a manner that "wouldn't mislead investors as to what that backlog consisted of"); *Khoja*, 899 F.3d at 1010 (once defendants touted interim FDA results, they were required to disclose that those results reflected a high degree of uncertainty – even in light

of disclosures that the interim analysis may not be predictive of future results); *In re Apple*, 2020 WL 2857397, at \*11 (once defendants touted high rates of phone upgrades, they were required to disclose that new operating software, which slowed phone operations, contributed to the high upgrade rate).

Against the weight of these allegations, Defendants argue they had no duty to disclose TikTok was Fastly's largest customer. Mot. at 12-15. They are wrong. "Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014). Nor did Defendants need to create an impression that TikTok was ***not*** a Fastly customer, Mot. at 12-14, in order for their statements to be misleading. It is sufficient for Defendants to "'give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists,'" namely that none of Fastly's enterprise customers – let alone, Fastly's single, largest customer – were under U.S. government scrutiny and at risk of being banned in the U.S. *Berson*, 527 F.3d at 985; ¶¶52-72. In *Berson*, for example, the Court did not hold that the statements were misleading because Defendants created a misleading impression that "backlog" did ***not*** include stopped work, but instead that it was "plausible" that investors would have understood "backlog" to mean work still in progress or work yet to be started. *Id*. at 985-87. Further, it would be absurd for the statements to have to mention TikTok to be misleading (Mot. at 13-14) since their failure to do so is precisely why they were misleading. Because TikTok was Fastly's largest enterprise customer at the time, Defendants' statements – which all pertained either to the strength of the Company's enterprise customers, their ability to continue thriving, their increased usage or their driving revenue growth – directly covered TikTok. ¶¶52-72.[7]

---

[7] The cases Defendants rely on in furtherance of their argument are misplaced. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (the statement about the stock repurchase program bore no relationship with a potential merger); *Veal v. Lendingclub Corp.*, 2020 WL 3128909, at \*7 (N.D. Cal. June 12, 2020) (the statement about the DOJ and SEC investigation bore no relationship with an FTC investigation); *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at \*13 (N.D. Cal. Apr. 28, 2020) ("defendants' 'gross revenues' have no relation to the defendants' 'recurring revenue management services'"); *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at \*14 (N.D. Cal. Sept. 27, 2012) ("*Kovtun II*"), *aff'd, Ingram v. VIVUS, Inc.,* 591 F. App'x 592 (9th Cir. 2015) (Plaintiff conceded that defendants disclosed the very information it alleged was not disclosed).

**b.    The Omitted Information Was Material**

It defies common sense to suggest that disclosing that TikTok was Fastly's largest enterprise customer would not have been material to a reasonable investor when TikTok was facing a potential U.S. ban (¶¶17-26) and Defendants repeatedly emphasized to investors the importance of a "limited" number of enterprise customers as their "critical" and "primary revenue and growth driver." ¶¶54, 63, 116. Indeed, once these details were made known to the public, Fastly's stock price declined 17.7% in one day. ¶¶5, 36, 73; *see In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 274 (3d Cir. 2005) (materiality "'may be measured post hoc by looking to the movement, in the period'"); *S.E.C. v. Mozilo*, 2009 WL 3807124, at *10 (C.D. Cal. Nov. 3, 2009) (stock price decline of 11% following disclosure supported a finding of materiality). And analysts immediately tied the price decline to Fastly's revelation that TikTok was its largest customer and the risk that posed to Fastly's revenues going forward. ¶137.

Defendants' argument that the risk of a TikTok ban was far too remote to be material because the U.S. government's attention on TikTok as a national security threat did not intensify until *after* Fastly reported first quarter results in May 2020, is meritless. Mot. at 1, 5, 14. As a preliminary matter, "materiality . . . is a 'fact-specific' inquiry" typically reserved for the trier of fact (*Matrixx I*, 563 U.S. at 40-43) and is inappropriately addressed at the motion to dismiss stage unless it is "so obvious that reasonable minds cannot differ" (*Durning v. First Boston Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987)). As alleged in the Complaint, and contrary to Defendants' claim, the U.S. government targeted TikTok as a serious national security threat as early as October 2019, concluding that "TikTok is a potential counterintelligence threat we cannot ignore." ¶22. Given the severity of this claim, the U.S. government acted swiftly and by January 2020, just three months later, the U.S. Air Force, Marine Corps, Coast Guard and Homeland Security had all banned the use of TikTok and the U.S. officials were introducing legislation to prohibit all federal employees from using the app. ¶¶23-26. Thus, by May 2020, when Defendants made their misleading statements and material omissions, not only had the banning of TikTok intensified in the U.S., but CFIUS, a committee that reported directly to then-president Trump, was in the midst of a full blown investigation to determine TikTok's fate as a national security threat and whether the company could

continue to do business in the U.S.  ¶¶17-21.[8]  These facts more than demonstrate a jury question as to whether "there is '"a substantial likelihood that the disclosure of the omitted fact would have been viewed by [a] reasonable investor as having significantly altered the 'total mix' of information.'"" *Matrixx I*, 563 U.S. at 38; *see also Flynn*, 2016 WL 3360676, at *11-*12 (the fact that defendant "had not yet felt the loss resulting from [its manufacturer's] regulatory shortcomings when it allegedly made these statements [because it had not yet been banned] does not make the statements any less misleading").  Further, Defendants recognize there was a possibility of a U.S. ban when arguing that "Fastly's risk factors were 'entirely consistent' with the possibility a major customer could face regulatory bans."  Mot. at 15.

**c.      Defendants' Risk Disclosures Failed to Disclose the Material Risks Pertaining to TikTok**

On May 8, 2020, Defendants also disclosed certain risks that "could" harm Fastly's business, including: (1) losing a key customer since they depend on a limited number of customers (¶63); (2) a government prohibition of doing business with a customer (¶64); (3) a decline in demand (¶65); (4) a lack of usage increase (¶66); and (5) an impairment in their ability to retain customers and expand their usage (¶67).  These risk disclosures were misleading because they merely created an impression that there was only a potential vulnerability and not an actual risk that Fastly would lose its key customer.  ¶70; *see Flynn*, 2016 WL 3360676, at *4, *10-*11 (company's statements regarding risks that "could impair" its financial condition were misleading as serious regulatory issues had already transpired).

Defendants contend that, combined together, two separate warnings in their 1Q20 10-Q that the "U.S. government has expressed concerns about the ability of companies operating in China to do business in the U.S. or with U.S. companies" and that "the percentage of revenue generated from

---

[8]   The CFIUS data Defendants rely on is not on point.  Mot. at 5.  Most relevant here was CFIUS's drastic crackdown on Chinese investments in the U.S. under the Trump administration.  ¶¶17-21.  Further, the same article they claim supports their position that the chance of any adverse CFIUS action was remote,  Mot. at 5, 14, outlines the possibility of a "divestment" (Declaration of Janelle M. Fernandes in Support of Defendants' Motion to Dismiss Plaintiff's Consolidated Complaint (ECF No. 70-1) ("Fernandes Decl."), Ex. 4 at 2).  *Schuster v. Symmetricon, Inc.*, 2000 WL 33115909 , at *6 (N.D. Cal. Aug. 1, 2000), a case Defendants cite, is inapposite because there the court merely held that the defendants could not have believed that demand for a product would drop when they ordered $5 million worth of component material for that product during the class period.

customers outside the United States was 35% of our total revenue" inoculate their misrepresentations. Mot. at 14; Fernandes Decl., Ex. 8 at 64. Defendants are wrong. First, "'whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact.'" *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 387 (N.D. Cal. 2020). Second, nowhere do Defendants disclose the percentage of revenue generated from a Chinese company. But most importantly, Defendants' caution is at best misleading as it presents "the risks . . . in the abstract, with no indication that the risk 'may already have come to fruition.'" *Siracusano v. Matrixx Initiatives, Inc.,* 585 F.3d 1167, 1181 (9th Cir. 2009) ("*Matrixx II*"), *aff'd,* 563 U.S. 27 (2011) (a company's risk disclosures warning of product liability claims in the abstract were misleading when the company was already facing multiple such lawsuits); ¶70. This generalized disclosure warned of the "economic trade negotiations and tensions between the Chinese and U.S. governments" (Fernandes Decl., Ex. 8 at 55) and said nothing about the known U.S. government investigation and escalating U.S. bans on TikTok due to its threat to national security that were already in progress when the purported disclosure was made, which placed a higher risk on TikTok's continued use of Fastly's platform. ¶¶17-26. Indeed the seriousness of TikTok's situation as a potential threat to national security due to its ties to China and the escalating U.S. government bans over a short period between October 2019 and February 2020, posed a much different risk than the Company's generalized purported warning of "regulatory risk" or "trade tensions" that ***could*** impact revenues, and one that investors would have treated differently had they known that TikTok had grown to be Fastly's largest customer and contributor to the Company's revenue growth. *See In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *6 (C.D. Cal. June 7, 2018) ("hypothetical risk disclosures . . . do not absolve Defendants of their duty to disclose known material" facts); *Berson*, 527 F.3d at 986. Moreover, Defendants' argument that this generalized "regulatory risk" disclosure was "entirely consistent" with the possibility that a major customer like TikTok could be facing a ban (Mot. at 13, 15), by itself concedes materiality.[9]

---

[9]  *In re Intuitive Surgical Sec. Litig.*, which Defendants cite, is not on point. There, defendants had warned investors of the exact risk they were facing – product liability claims – therefore, omitting the exact number of such claims was not misleading. 65 F. Supp. 3d at 836.

### 2.   Defendants' August Statements Were Materially False and Misleading

On August 5, 6 and 11, 2020, over five weeks into 3Q20, Defendants reassured investors that (1) they are assuming "status quo" with regard to TikTok and are seeing "strong growth" for 3Q20 (¶¶76-79, 91, 93, 95); and that (2) they "are in a position to backfill the majority of [lost] traffic" in case of a TikTok ban "on a short notice" (¶¶74-75, 81, 92, 94).  In truth, (1) TikTok had already started shifting traffic away from Fastly five weeks prior; (2) other Fastly enterprise customers had begun lowering their usage at the beginning of 3Q20; and (3) Fastly had already turned down many potential customers during the first half of 2020 because of the constraints TikTok's growing usage had put on Fastly's platform.  ¶¶80, 82, 90, 96, 98, 101-105, 111-113, 141.  Moreover, because any lost TikTok revenue would be very substantial (Fastly relied on TikTok for 13% of its revenues by 2Q20), at the time these statements were made, there was a substantial risk that Fastly could not quickly backfill the loss of TikTok revenue as promised and Defendants therefore had no reasonable basis to expect to meet the 3Q20 and FY 2020 guidance given.  *Id.*; *Khoja*, 899 F.3d at 1001-10 (once Defendants chose to tout the apparently positive interim results, they had the obligation also to disclose that they were likely unreliable).

On August 7, 2020, Defendants also disseminated certain misleading "risks," including that the uncertainty surrounding TikTok's availability in the U.S. "could have a negative impact" on Fastly's earnings going forward.  ¶¶83-89.  Nothing in those purported warnings alerted investors to the fact that TikTok was already moving traffic away from Fastly's platform and that there was a material risk that Fastly would not be able to quickly replace the lost traffic.  ¶90.

Plaintiff's allegations are plausible and particularized, which is all that is required.  *Twombly*, 550 U.S. at 569-70.  In arguing otherwise, Mot. at 18-19, Defendants ignore the Complaint's allegations that TikTok started moving traffic away from Fastly at the end of 2Q20 – five weeks prior to the misstatements – in anticipation of a potential U.S. ban.  ¶¶80, 82, 90, 96, 113, 141.  Defendants also ignore the Complaint's allegations regarding the identity of the other enterprise customers who also moved traffic away from Fastly at the beginning of 3Q20.  ¶105 (Pinterest, the NY Times, Wayfair and especially Amazon and its gaming subsidiary Twitch.tv).  Defendants also

do not deny Plaintiff's allegations that TikTok put constraints on Fastly's platform and caused Fastly to turn down business from other companies until the end of 2Q20 when it started shifting traffic away (¶¶80, 82, 90, 96).  Finally, Plaintiff pleads a strong inference of scienter.  *See* §IV.C., *infra*.  Therefore, the Complaint satisfies the Rule 9(b) requirements.[10]

Contrary to Defendants' contention (Mot. at 18-19), the Feb. 10, 2021, *Seeking Alpha* article is not "hindsight speculation" as it establishes contemporaneous facts and omissions, namely that TikTok had already shifted traffic five weeks before Defendants made the alleged misstatements.  ¶¶38, 113; *see Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. Aug. 7, 2020).  Further, Defendant's objection that the October 16, 2020 Credit Suisse analyst report is "hearsay," (Mot. at 18), is also baseless  as "plaintiffs are only required to plead facts, not to produce admissible evidence."  *McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000).  The test is whether external sources "are sufficiently particular and detailed to indicate their reliability," (*id.*), which is readily met here as the Credit Suisse report provides detailed facts and is based on the analyst's "checks" not on mere opinion.  ¶102; *McKesson*, 126 F. Supp. 2d at 1272 (crediting newspaper article that includes "numerous factual particulars and is based on an independent investigative effort").[11]

Defendants' other arguments are also unfounded.  That Defendants could not have known what usage customers' commitments would be for the remaining two months of the quarter (Mot. at 18) is irrelevant.  Plaintiff alleges that Defendants knew TikTok's and other enterprise customers'

---

[10]   The other details mentioned by Defendants, Mot. at 18-19, are not critical to understanding the claims, and furthermore are simple, discrete facts "most certainly in Defendants' possession," which are "easily discoverable."  *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1060 (W.D. Wash. 2020) ("No further specificity is required to enable Defendants to make a meaningful denial.").  The cases Defendants cite are not on point.  *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at *11 (N.D. Cal. Aug. 10, 2005) (relying on information from confidential witnesses); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (relying on internal reports without providing any specifics about those reports).

[11]   Defendants mischaracterize the Credit Suisse report – it does not state that TikTok "likely" diversified usage, but that the analyst's checks show TikTok moved traffic away from Fastly.  ¶102.  The cases cited by Defendants are inapposite.  *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *8 (N.D. Cal. Dec. 18, 2017), *aff'd,* 765 F. App'x 239 (9th Cir. 2019) (the plaintiff alleged "nothing to indicate what TriNet's risk management capabilities actually were at the time the allegedly false statements were made"); *Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1051-52 (N.D. Cal. 2020) (vague and unreliable CW accounts).

usage were down at the time the statements were made.  ¶¶80, 82, 90, 96, 105, 113.  And contrary to Defendants' contention, their generic warning that they cannot "'totally guarantee'" their ability to quickly backfill lost TikTok revenue (Mot. at 18) is wholly inadequate.  *See, e.g.*, *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 244 (5th Cir. 2009) (generalized warnings that statements are "'not guarantees of future performance'" are insufficient to satisfy the PSLRA).

### 3.    The Safe Harbor Provides No Protection

None of the five statements identified (Mot. at 10) qualify for the safe harbor protection, which only applies where a statement is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement[.]"  15 U.S.C. §78u-5(c)(1).  First, four of the statements incorporate elements of present facts as they represent that Fastly's enterprise customers are *presently* in good shape and that the *present* facts suggest a positive outlook, including that Fastly will be able to backfill any lost usage.[12]  The "non-forward-looking portions of [these] mixed statements are not eligible for the safe harbor provisions of the PSLRA."  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143, 1146-48, 1150 (9th Cir. 2017) ("'[o]ur pipeline *continues* to build to record levels'" unprotected); *see also Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, *8-*9 (C.D. Cal Feb. 27, 2015) ("'should also *continue* to generate revenues'" unprotected).  And the safe harbor is inapplicable to omissions of present facts.  *See Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *10 (C.D. Cal. Apr. 12, 2016).

Even if any of the misstatements were deemed forward-looking, there is no safe harbor protection because they were not accompanied by meaningful cautionary language.  Disclosure of vague and abstract risks that "could" or "may" impact the business are insufficient when those risks had already materially increased in the form of a CFIUS investigation and government bans of TikTok (¶¶17-26, 70) and a decrease in usage from TikTok and other enterprise customers (¶¶90,

---

[12]    ¶59 ("*At least at this time we're not seeing* anything yet. . . *And so far, they seem* to be in good shape . . . *But at this time*, *we're not seeing* anything at least concerning from a sort of the Q2 perspective."); ¶¶74, 77, 93 ("*we're* sort of assuming a little bit of a sort of a status quo *at this moment" and "we believe we are* in a position to backfill the majority of [any lost TikTok] traffic"); ¶56 (Fastly was experiencing "*continued* customer expansion"); ¶53 (Fastly was experiencing "*continued* growth.").

105, 113). *See* §IV.B.1.c., *supra*; *In re CV Therapeutics, Inc.*, 2004 WL 1753251, at \*11 (N.D. Cal. Aug. 5, 2004) (safe harbor inapplicable where defendants used the words "may" and "could" to purportedly warn of the delay of approval or the risk of non-approval of a drug when they knew that the FDA harbored serious doubts about the drug); *Lormand*, 565 F.3d at 244 ("no[] guarantees" types of warnings are insufficient). Further, these warnings were inadequate in the context of Defendants' statements reassuring investors about the strength of their enterprise customers and their continuing to drive growth, as well as Defendants' ability to quickly backfill any lost TikTok revenues. *See In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at \*6.[13]

Finally, no cautionary language would have immunized Defendants, as the Complaint alleges their actual knowledge of their statements' falsity. ¶¶70, 90, 114-133; §IV.C.1., *infra*. *See STAAR Surgical*, 2016 WL 6699284, at \*11 ("'[C]autionary language does not protect material misrepresentations or omissions when defendants knew they were false when made.'"). That Fastly ultimately met the revised 3Q20 guidance and FY 2020 guidance is irrelevant because the triggering event for damages is Defendants' October 14, 2020 pre-announcement when they reduced their 3Q20 guidance and withdrew their FY 2020 guidance, causing the stock to plummet. ¶¶97-105. The post-Class Period events do not negate falsity or scienter – investors were already damaged. *Id*. Defendants also misstate the law on scienter – Plaintiff need only raise a strong inference that Defendants had "no reasonable basis" to expect to meet the guidance, *Provenz v. Miller,* 102 F.3d 1478, 1487 (9th Cir. 1996), which it did. ¶80; *see*, §IV.C.1., *infra*.[14]

---

[13]    The cases Defendants cite are distinguishable. *See In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 993 (N.D. Cal. 2017) (defendants warned of a potential lack of demand and the potential cancellation of contracts, "the two risk factors that Plaintiffs allege that Defendants failed to disclose"); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) (*Cutera* warned that its ability to compete and perform depended on the ability of its sales force to sell products, and that failure to attract and retain sales personnel would materially harm its business, which "spoke directly to the purported misstatements alleged by the complaint"); *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at \*11 (N.D. Cal. Feb. 12, 2015) (statements concerned "opportunity for growth *in the future* and the reasons Fusion believes those opportunities **will exist**"); *In re Nuvelo, Inc., Sec. Litig.*, 2008 WL 5114325, at \*10, \*16 (N.D. Cal. Dec. 4, 2008) (projections about the likelihood of FDA approval did not include elements of present facts and defendants' disclosures were "entirely consistent with what plaintiffs allege they knew").

[14]    The cases Defendants cite, Mot. at 11-12, are distinguishable because the defendants proffered a more compelling inference that the projections were reasonable. *W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*, 2018 WL 4524107, at \*20 (D. Or. May 29, 2018), *aff'd sub nom. W. Pa.*

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 4:20-cv-06024-PJH    - 15 -
4847-7780-7603.v1

### 4.    The Statements Are Not Inactionable Statements of Historical Performance

Defendants claim that some of their statements are accurate descriptions of historical results. Mot. at 15-16.  But "literal truth is not the standard for determining whether statements . . . are misleading." *Miller*, 519 F.3d at 886.  "[W]here a party goes beyond describing historical results and touts specific factors driving those results, it is obligated to disclose negative information related to those factors."  *In re Apple*, 2020 WL 2857397, at *10.[15]  Because Fastly's May and June statements attributed its performance to its enterprise customers, Defendants were required to disclose that its largest enterprise customer faced a U.S. ban, which would jeopardize revenues. *See e.g.*, ¶¶53, 57, 63.  Similarly, because Fastly's August statements attributed its performance to a subset of customers, including TikTok, Defendants were required to disclose that TikTok and other enterprise customers had already moved traffic away from the platform and that there was a substantial risk they could not backfill that lost revenue. *See, e.g.*, ¶¶74, 89.

### 5.    Defendants' Misrepresentations Were Neither Nonactionable Corporate Optimism nor Opinion

The Court should also reject Defendants' conclusory claim that the Complaint pleads inactionable statements of corporate optimism.  Mot. at 16-17.  "'When determining whether statements amount[] only to puffery, the [C]ourt must analyze the context in which the statements were made.'"  *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014).  Here,

*Elec. Emps. Pension Fund v. Mentor Graphics Corp.*, 788 F. App'x 421 (9th Cir. 2019); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1008 (N.D. Cal. 2008); *Williams v. Globus Med., Inc.*, 869 F.3d 235, 246 (3d Cir. 2017).  And, unlike in *Globus*, where the "the original, challenged projection" was met – Fastly's original 3Q20 guidance was missed.  *Id.* at 246; ¶¶107, 112.  As to the 2Q20 guidance, Plaintiff never alleged that it was false and misleading.  ¶¶52-62.

[15]    *See also In re Netsolve, Inc. Sec, Litig.*, 185 F. Supp. 2d 684, 693-94 (W.D. Tex. 2001) (holding that when reporting accurate financial data and making positive statements about their business, defendants failed to disclose four allegedly material problems relevant to this data); *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 599 (N.D. Cal. 2019) ("Having touted the good news that supply disruptions were leading to increased prices and thus increased profits, McKesson had a duty to also disclose that some portion of its increased profits was actually due to far riskier and less sustainable unlawful agreements."); *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at *8-*9 (D. Or. June 27, 2017) (touting organic growth requires disclosure of unsustainable sales tactics); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 180 (S.D.N.Y. 2010).  In none of the cases Defendants cite (Mot. at 16) did the defendants' statements tout the drivers of growth.

Defendants pluck certain words and phrases out of their false statements robbing them of the very context the Court should consider.  Mot. at 16 (emphasis omitted).  Since Defendants identified "customer demand" and "enterprise customers" as key factors critical to Fastly's success (¶¶64-65, 116), they cannot later claim that concrete statements such as that they were seeing "stronger demand" and that their enterprise customers "seem to be in good shape" have no meaning to investors.  Unlike in the cases Defendants cite, the statements, read in context, go "beyond 'feel good' optimistic statements."  *See, e.g.*, *Union Asset Mgmt. Holding AG v. SanDisk LLC*, 2017 WL 3097184, at \*1 (N.D. Cal. June 22, 2017) (in context "'we have made ***strong*** progress'" was not puffery); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996) (in context, statement that "'everything [was] going fine'" actionable); *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1028 (N.D. Ill. 2004) (statements that preferred credit card programs realized "significant" earnings and "solid" sales and earnings not puffery.)

Regardless, general statements of optimism give rise to a claim "when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *Quality Sys.*, 865 F.3d at 1143 (reassuring investors that "'everything [was] going fine'" with FDA approval when the company knew FDA approval would never come was materially misleading) (citing *Warshaw*, 74 F.3d at 959).  Defendants knew TikTok was not in good shape and that there was a material risk they would lose this customer which would impact their revenues (¶¶62, 70, 72, 114-133; §IV.C.1., *infra*.).  Defendants also knew there was a substantial risk they couldn't backfill lost TikTok revenues and thus that their guidance had no reasonable basis (¶¶80, 82, 90, 96, 114-133; §IV.C.1., *infra*.).  *See In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1009-10 (N.D. Cal. 2008) (defendants liable for claiming they were ""***very confident*** in the data"" when they knew FDA approval was unlikely); *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (statement that inventory situation was "'***in good shape***'" when defendants knew the opposite to be true, was actionable).  Defendants' cases are all distinguishable as the statements were not misleading in context.  *See, e.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014); *Mulligan*, 36 F. Supp. 3d at 968.

The same goes for Defendants' argument that certain statements are inactionable opinions,

Mot. at 17.  First, these statements were framed as *facts*, not opinions.  *See Mulligan*, 36 F. Supp. 3d at 967.  Second, even opinions may be actionable.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015) (the omission of "facts going to the basis for the issuer's opinion" can still render an opinion statement misleading).  Unlike in *Markette v. XOMA Corp.*, 2017 WL 4310759, at *4 (N.D. Cal. Sept. 28, 2017) and *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616-20 (9th Cir. 2017), Plaintiff has adequately alleged that Defendants' statements did not align with the information they possessed at the time and were therefore misleading.  ¶¶62, 70, 72, 80, 82, 90, 96.

### C.    The Complaint Alleges a Strong Inference of Scienter

To satisfy the scienter requirement, a complaint must allege that defendants made false or misleading statements either intentionally or with deliberate recklessness.  15 U.S.C. §78u-4(b)(2); *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008).  The Ninth Circuit has held that "'a reckless omission of material fact' satisfies the element of scienter."  *In re Alphabet, Inc. Sec. Litig.*, 1 F. 4th 687, 701 (9th Cir. 2021).  "The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. at 308, 310, 322-23 (2007).  A "'strong inference'" is one that a reasonable person would deem "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 324.  In other words, "if two possible inferences – one fraudulent and the other nonfraudulent – are equally compelling, a plaintiff has demonstrated a strong inference of scienter."  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1033 (9th Cir. 2016).[16]

---

[16]    To the extent Defendants are asserting confidential witnesses are required to plead scienter, they have no support for this contention.  Mot. at 21.  For example, courts have consistently found scienter sufficiently pled without the use of any confidential witnesses.  *See, e.g.*, *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004); *Ernst & Young*, 641 F.3d at 1095-103; *SEC v. Bardman*, 216 F. Supp. 3d 1041, 1052-54 (N.D. Cal. 2016).

**1.**    **The Complaint Alleges Defendants' Direct Knowledge of TikTok's Issues Which Posed a Serious Risk to Fastly's Revenues**

The Complaint alleges Defendants' direct knowledge of the omissions that made their May, and June 2020 statements materially misleading (¶¶52-72), which supports a strong inference of scienter. *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1022 (S.D. Cal. 2005) (the "'fact that the defendants published statements when they ***knew*** facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter'"); *see also N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011).

First, at the start of the Class Period Defendants knew the embattled TikTok had become Fastly's largest customer, representing over 10% of the Company's revenues. ¶¶32-33, 68. In fact, in Fastly's SEC Form 10-Q, filed on May 8, 2020 the Company disclosed that "***One customer*** accounted for 10.5% of revenue" for 1Q20, but failed to disclose to investors that customer was in fact TikTok. ¶68; *see also* ¶114. Moreover, on August 7, 2020, Defendants admitted that TikTok was Fastly's "top" customer for the first half of 2020. ¶83. Thus, the only inference here is that Defendants knew TikTok was Fastly's largest customer at the start of the Class Period.

Second, the Complaint alleges that at the start of the Class Period Defendants also knew the U.S. government was taking aggressive action against TikTok due to the fear that it posed a national security threat because of its ties to China's government. ¶¶118-120; *see also* ¶¶17-18, 22-31. Indeed, by late 2019, CFIUS, a cross-government committee that reported directly to then-President Trump, was investigating TikTok as a national security threat and by February 2020 practically all branches of the U.S. military had banned the use of TikTok on government issued devices. By the start of the Class Period it was clear that the U.S. government was escalating action against TikTok and taking seriously the threat the app posed to national security, which meant that TikTok's U.S. operations were at risk of being shut down. ¶¶62, 70, 72.

Defendants do not dispute these allegations or knowledge of them. Instead they argue that it was not until July 2020, when then-President Trump himself threatened a ban against TikTok, that Defendants needed to disclose to investors that TikTok was the Company's largest customer and the

risk that posed to revenues. Mot. at 1, 5, 14. But this ignores the Complaint's detailed allegations showing that at the start of the Class Period TikTok was already facing the risk of being shut down. ¶¶17-18, 22-31. This is simply a materiality argument, not a scienter one, which is a question of fact, and not properly disposed of at the motion to dismiss stage.[17] *See*, §IV.B.1.b., *supra*.

Defendants argue they get a free pass for knowingly failing to disclose the serious risks associated with TikTok being Fastly's largest customer by the end of 1Q20 because SEC regulations in effect at the time did not require Fastly to disclose TikTok's name. Mot. at 21. But this argument is a red herring. The allegations here are based on the Exchange Act and Rule 10b-5, and whether Defendants' statements were misleading is governed by 17 CFR §240.10b-5(b) where disclosure is required when necessary "to make . . . statements made, in the light of the circumstances under which they were made, not misleading." *See also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014). The Complaint alleges the disclosure of TikTok as Fastly's single largest customer was material to investors' understanding of the Company's business risk as a whole because of the escalating problems and increasing U.S. bans TikTok was facing just a few months before the Class Period. Moreover, Defendants' own behavior contradicts their argument as they readily disclosed to investors Fastly's top customers in slide presentations but conspicuously left out TikTok. ¶9.

The Complaint also alleges scienter with regard to Defendants' August 2020 false and misleading statements. ¶¶73-96. First, the Complaint alleges that when Defendants made their August statements they knew, but failed to disclose, that TikTok was already removing traffic from Fastly's platform to non-U.S. CDNs and was accelerating its own CDN deployment because of the bans it was facing in the U.S. ¶¶80, 82, 90, 96. The Complaint plausibly alleges that, as Fastly's top executives, both Bixby and Lares knew this because TikTok was the Company's largest customer (¶¶114); Defendants closely monitored Fastly's enterprise customers, including TikTok because they represented the Company's primary revenue driver and were critical to Fastly's business and long

---

[17]  Defendants' claim that scienter is negated because Fastly generally disclosed the regulatory risk surrounding its "Chinese customers" must also be rejected because this purported disclosure was insufficient to warn of the specific risk concerning TikTok. *See* §IV.B.1.c., *supra*.

term success (¶¶115-116); and Bixby *admitted* that Defendants had been "closely" monitoring the TikTok "situation" and the risk it posed to Fastly (¶117), which alone is sufficient to raise a strong inference of scienter. *S. Ferry*, 542 F.3d at 785 (specific allegations "that defendants actually did monitor the data that were the subject of the allegedly false statements . . . is sufficient under the PSLRA" to invoke the core operations inference).

Also, the Complaint alleges that Defendants knew it would be difficult, if not impossible, to backfill the traffic TikTok was removing from Fastly's platform because Fastly had a limited pool of customers that could match TikTok's usage, which further supports scienter with regard to the August false and misleading statements. ¶¶80, 82, 90, 96. In Fastly's public filings, Defendants admitted Fastly was dependent on a "limited number of customers for a significant portion of our revenues" ¶83. Indeed, 88% of Fastly's revenues were generated by only 304 customers (out of 2000), and out of those 304 customers, just 10 customers generated 33% of the Company's revenues, with TikTok representing 13% of that revenue. ¶¶83, 88-89. Moreover, up until the end of 2Q20, TikTok put constraints on Fastly's platform and caused Fastly to turn down business from other companies, a fact Defendants do not challenge. ¶¶80, 82, 90, 96. And although not necessary, contrary to Defendants' contention, the Complaint does identify the enterprise customers who moved traffic away from Fastly at the beginning of 3Q20. ¶105.

Collectively, these allegations show "'that Defendants had actual access to the disputed information'" or where the "prominence" of the disputed information makes it "'absurd'" to suggest that management did not know of it, which supports a strong inference of scienter here. *Reese v. Malone*, 747 F.3d 557, 577 (9th Cir. 2014); *S. Ferry*, 542 F.3d at 785-86.[18]

---

[18] Defendants' reliance on *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *15 (N.D. Cal. Mar. 24, 2014) to claim the core operations inference does not apply here, is meritless. Mot. at 22. Indeed, *Browning* confirms that Bixby's admission that Defendants were monitoring TikTok is sufficient to plead scienter under the PSLRA. *Browning*, 2014 WL 1285175, at *15 ("On the other hand, 'specific allegations that defendants actually did monitor the data that were the subject of the allegedly false statements . . . is sufficient under the PSLRA.'") (citing *S. Ferry*, 542 F.3d at 785). Defendants' reliance on *NVIDIA Corp.*, 768 at F.3d 1064 is also unpersuasive. Mot. at 22. Unlike Bixby's admission here that Defendants were monitoring TikTok and the risk it posed, in *In re NVIDIA* there were no such specific allegations. *Id.*

### 2. Plaintiff's Motive Allegations Further Support a Strong Inference of Scienter

While "motive is not required to adequately plead scienter" (*Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at \*21 (C.D. Cal. May 8, 2013)), the Complaint also details Defendants' motive to conceal the problems with TikTok as its largest customer, which further support scienter. *See Reese*, 747 F.3d at 569; *Tellabs*, 551 U.S. at 325. Defendants had a motive to keep Fastly's stock price artificially inflated during the Class Period to complete a $270 million dollar public stock offering and to issue stock worth $575 million to fund an acquisition of Signal Science. ¶¶121-128. The Complaint alleges that within days of Defendants' May 6, 2020 misleading statements and omissions, Fastly announced a public offering of 6 million shares of Class A common stock to raise desperately needed capital for its business. ¶¶121-125. Fastly was operating at a $64 million collective net loss for the five consecutive quarters leading up to the Class Period and was facing additional losses with the real risk of losing TikTok as its largest customer. ¶¶123-125. Thus, Defendants had strong motive to maintain the artificial inflation in Fastly's stock by misrepresenting and obscuring the nature of Fastly's reliance on TikTok and the serious risks that posed, given that the proceeds generated from the offering would be directly tied to Fastly's stock price. ¶126. *Nguyen v. Radient Pharms. Corp.*, 2011 WL 5041959, at \*8 (C.D. Cal. Oct. 20, 2011) (allegations that Company was "desperate for operating cash" and its "ability to continue operating was dependent on raising additional capital" can be considered as circumstantial evidence of scienter); *In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266, 275 (S.D.N.Y. 2014) (finding a $117 million stock offering provided motive to inflate the price of the Company's stock during the Class Period); *accord In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 270 (2d Cir. 1993) (finding motive to keep stock price artificially inflated for a stock issuance).[19]

---

[19]   Defendants' reliance on *Portal Software*, 2005 WL 1910923, at \*12, does not support otherwise. In fact, the court in *Portal Software* found allegations that "defendants were motivated to inflate artificially [their company's] stock price in the short term . . . and obtain much-needed operating capital" through a secondary offering evidenced "a palpable motive for fraud" that was "stronger than the generic 'desire to raise capital' which can be attributed to every company." *Id*. The court found that allegations of scienter was lacking because of other reasons, which are not present in this case.

Defendants assert that it would be illogical for them to be motivated to keep Fastly's stock price artificially inflated in order to maximize the proceeds from the May 2020 public stock offering because Fastly would have profited more had Defendants waited until *after* the fraud was revealed. Not so. Mot. at 23. First, when Defendants conducted the May public offering, they could not have known what Fastly's stock price would be five months into the future. Second, the Complaint alleges that at the time of the May public offering the Company was cash strapped and had been operating at a net loss for more than five consecutive quarters and thus was in critical need of additional capital. ¶¶123-126. Also, when the truth that TikTok was Fastly's largest customer was eventually disclosed, Fastly's stock dropped 17.7%, or $19.28 per share (artificial inflation). ¶36. If this same artificial inflation (due to Defendants' alleged fraud) was not factored into the $41.50 per share price of the May public offering (¶¶122, 126), the proceeds from the offering would have been *reduced by half*, based on a share price of $22.22 ($41.50 offering price - $19.28 artificial inflation). Thus, by waiting until after the offering to disclose the material omitted information, Defendants were able to almost double the proceeds from the May public offering.

Moreover, just weeks after Defendants made materially misleading statements about Fastly's ability to "backfill" any lost revenue from TikTok and concealed that in fact TikTok had been shifting traffic off Fastly's platform, the Company announced it was acquiring Signal Science using in part TikTok stock. ¶¶127-128. This also gave Defendants motive to maintain the artificial inflation is Fastly's stock price and further supports scienter. *See Rothman v. Gregor*, 220 F.3d 81, 94 (2d Cir. 2000) (facts showing corporate defendant had an "eye toward using its stock to acquire [third party corporation]" showed scienter on account of motive to "artificially inflate its stock price"); *Ontario Tchrs.' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 169-70 (D. Conn. Sept. 2019) (motive satisfied in context where facts show corporate defendant planned to use stock "as currency to acquire" another company).[20]

---

[20] Defendants incorrectly argue that the Signal Science acquisition does not support scienter because the price of the stock used to buy Signal Science was set after the fraud was disclosed. Mot. at 23-24. But this is belied by Fastly's SEC Form 8-K filed August 26, 2020 wherein the Company represented that "The per share portion of the stock consideration will be based, subject to a two-way price collar, on the volume-weighted average price of a share of Class A Common Stock over the ten (10) consecutive trading day period ended on and including the third trading day immediately prior

The Complaint also alleges insider trading by both Bixby and Lares, which further fortifies a strong inference of scienter. *In re Questcor Sec. Litig.*, 2013 WL 5486762, *15 (C.D. Cal. Oct. 1, 2013) ("Unusual or suspicious insider stock sales may support a finding of scienter when the sales are 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'") (citing *No. 84 Employer- Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 938 (9th Cir. 2003)).  While Defendants were inflating Fastly's share prices, Bixby and Lares collectively sold 333,700 shares of Fastly stock for proceeds of over $20 million, more than 2 times the number of shares they sold in the same period leading up to the Class Period.[21]

### 3. Defendants' Competing Inferences Fail to Undermine a Strong Inference of Scienter

Last, Defendants assert that when viewed holistically, the competing inferences in this case undermine a strong inference of scienter.  Mot. at 25.  But Defendants' "competing" inferences are simply based on repeated materiality arguments that do not "compete" with Plaintiff's scienter allegations.  Defendants' claim that the "regulatory risk" TikTok was facing had "materially" changed by August 2020 does not weigh in their favor because it ignores that by late 2019, the U.S. was already actively banning the use of TikTok because it was considered a cyber-threat.  ¶¶23-26.

---

to the date of the Closing," which was October 1, 2020 (¶127), before Defendants' fraud was revealed, https://www.sec.gov/Archives/edgar/data/1517413/000151741320000194/projectgriffon-pressre.htm.

[21]   Defendants' only challenge to the alleged insider trading is that the sales were made pursuant to their purported Rule 10b5-1 trading plans.  Mot. at 24.  But that is an affirmative defense that is inappropriate to adjudicate at the pleading stage.  Such a defense requires a finding that the plan was entered into in good faith, which cannot be determined at this stage, where the Court must draw all inferences in favor of the non-moving party. *Azar v. Yelp. Inc.*, 2018 WL 6182756, at *18-*19 (N.D. Cal. Nov. 27, 2018) (acknowledging that stock sales made "'according to pre-determined plans may rebut an inference of scienter'") (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008)) (but holding that "[w]ithout reviewing [defendant's] actual trading plan, the Court cannot determine whether these requirements were met, and cannot conclude that the plan negates any inference of scienter"); *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1193 (D. Nev. 2009) ("'a 10b5-1 trading plan does not provide an absolute defense to a claim of insider trading.  Rather, it requires an additional factual finding of good faith,'" which a court cannot make when considering a motion to dismiss); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 976 n.16 (N.D. Cal. 2009) (same); *Hodges v. Akeena Solar, Inc.*, 2010 WL 3705345, at *6 (N.D. Cal. May 20, 2010) ("the factual question of whether Defendant Cinnamon sold his stock pursuant to such an agreement is an issue appropriately resolved on summary judgment").  Tellingly, Defendants fail to include Defendants' purported 10b-5 trading plans in their request for judicial notice.

By the end of February 2020, just a few months before the start of the Class Period, the regulatory risk for TikTok had already escalated with the Air Force, Marine Corps, Coast Guard, Homeland Security and the Transportation Security Administration all completely banning the use of TikTok. *Id*. These facts also belie Defendants' claim that Fastly disclosed risks related to TikTok to investors as they became known. Mot. at 25. The stronger inference here, it that Defendants intentionally omitted to warn investors of the serious risks Fastly was facing with respect to TikTok at the start of the Class Period, to allow them time to complete a public stock offering that gave Fastly over $270 million in critically needed proceeds before investors learned the truth. In the end, the competing inferences Defendants wish the Court to draw simply confirm that there is a question of fact as to whether the information omitted would have been viewed by a reasonable investor as having significantly altered the total mix of information made available.[22]

DATED: July 26, 2021

ROBBINS GELLER RUDMAN
  & DOWD LLP
LAURIE L. LARGENT
CAROLINE M. ROBERT

s/ CAROLINE M. ROBERT
CAROLINE M. ROBERT

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
llargent@rgrdlaw.com
crobert@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Lead Counsel for Lead Plaintiff

---

[22] Defendants' reliance on *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 760 (1st Cir. 2011) is inapposite as the alleged omission and the purported disclosure were directly linked (*e.g.*, the company's declining sales in Japan). *Waters Corp.*, 632 F. 3d at 754.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 26, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ CAROLINE M. ROBERT
CAROLINE M. ROBERT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  crobert@rgrdlaw.com

4847-7780-7603.v1

## Mailing Information for a Case 4:20-cv-06024-PJH In re FASTLY, INC. SECURITIES LITIGATION

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com,e_file_SD@rgrdlaw.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Brett Hom De Jarnette**
  bdejarnette@cooley.com,galancr@cooley.com

- **Lubna Faruqi**
  lfaruqi@faruqilaw.com,ecf@faruqilaw.com

- **Janelle Marie Fernandes**
  jfernandes@cooley.com,emadrigal@cooley.com

- **Melissa Ann Fortunato**
  fortunato@bespc.com,ecf@bespc.com

- **Richard W. Gonnello**
  rgonnello@faruqilaw.com,ecf@faruqilaw.com,dbehnke@faruqilaw.com

- **Benjamin Heikali**
  Bheikali@faruqilaw.com,rglezakos@faruqilaw.com,ecf@faruqilaw.com,tpeter@faruqilaw.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com,e_file_sd@rgrdlaw.com,mkuwashima@rgrdlaw.com

- **Katherine M. Lenahan**
  klenahan@faruqilaw.com,ecf@faruqilaw.com

- **Angelica Lien Leo**
  aleo@cooley.com,jcorrell@cooley.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,asoto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,asoto@pomlaw.c

- **Marion Curry Passmore**
  passmore@bespc.com,ecf@bespc.com

- **Alexi Harry Pfeffer-Gillett**
  agillett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Caroline Maryse Robert**
  crobert@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Jessica Valenzuela Santamaria**
  jsantamaria@cooley.com,galancr@cooley.com,emadrigal@cooley.com

- **Nina M. Varindani**
  nvarindani@faruqilaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)