COOLEY LLP
JESSICA VALENZUELA SANTAMARIA (220934) (jvs@cooley.com)
BRETT H. DE JARNETTE (292919) (bdejarnette@cooley.com)
JANELLE M. FERNANDES (322217) (jfernandes@cooley.com)
ANGELICA LEO (334324) (aleo@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:    +1 650 843 5000
Facsimile:    +1 650 849 7400

Attorneys for Defendants
FASTLY, INC., JOSHUA BIXBY,
and ADRIEL LARES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re FASTLY, INC. SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>    ALL ACTIONS. | Case No. 4:20-cv-06024-PJH<br><br><u>CLASS ACTION</u><br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:         November 4, 2021<br>Time:        1:30 p.m.<br>Judge:       Hon. Phyllis J. Hamilton<br>Courtroom:  3 |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION.................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 1

    A.    Plaintiff Fails to Identify the Statements He Challenges ..................................... 1

    B.    Defendants' Forward-Looking Statements are Immunized from Liability
        Under the PSLRA Safe Harbor .......................................................................... 2

    C.    Plaintiff Fails to Plead That Any Statement Was False or Misleading.................. 4

        1.    The May 2020 Statements Were Not False or Misleading ......................... 4

        2.    Defendants' August Statements Were Not False or Misleading................. 9

    D.    Plaintiff Fails to Plead a Strong Inference of Scienter......................................... 11

III.  CONCLUSION.................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple, Inc. Sec. Litig.*,
    2020 WL 2857397 (N.D. Cal. June 2, 2020) ............................................................... 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 10

*In re Autodesk, Inc. Sec. Litig.*,
    132 F. Supp. 2d 833 (N.D. Cal. 2000) ..................................................................... 2

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ................................................................................... 6

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ............................................................................. 5, 6

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
    2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ........................................................ 13

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ................................................................................... 14

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................. 8, 14

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
    2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ....................................................... 12

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) ................................................................... 9

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010) ............................................................................. 3, 4

*In re Eventbrite, Inc. Sec. Litig.*,
    2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ......................................................... 6

*In re Facebook, Inc. Sec. Litig.*,
    477 F. Supp. 3d 980 (N.D. Cal. 2020) ................................................................... 2

*Greenberg v. Cooper Companies, Inc.*,
    2013 WL 2403648 (N.D. Cal. May 31, 2013) ......................................................... 9

## TABLE OF AUTHORITIES
### (CONT.)

**Page(s)**

*Hurst v. Enphase Energy, Inc.*,
  2021 WL 3633837 (N.D. Cal. Aug. 17, 2021).......................................................................... 11

*Indiana State Dist. Council of Laborers & Hod Carriers Pension
  & Welfare Fund v. Omnicare, Inc.*,
  583 F.3d 935 (6th Cir. 2009)........................................................................................................ 8

*In re Intuitive Surgical Sec. Litig.*,
  65 F. Supp. 3d 821 (N.D. Cal. 2014) ...................................................................................... 7, 8

*Jiangchen v. Rentech, Inc.*,
  2017 WL 10363990 (C.D. Cal. Nov. 20, 2017)........................................................................ 2

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)......................................................................................................... 6

*Kong v. Fluidigm Corp.*,
  2021 WL 3409258 (N.D. Cal. Aug. 4, 2021)............................................................................. 3

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002)................................................................................................... 14

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009)....................................................................................................... 4

*Markette v. XOMA Corp.*,
  2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ...................................................................... 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................................. 10

*Mulligan v. Impax Laboratories, Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) ........................................................................................ 8

*In re Netflix, Inc. Sec. Litig.*,
  647 F. App'x 813 (9th Cir. 2016) ............................................................................................... 4

*In re Netflix, Inc., Sec. Litig.*,
  964 F.Supp.2d 1188 (N.D. Cal. 2013) ...................................................................................... 5

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020)..................................................................................................... 15

*Osher v. JNI Corp.*,
  302 F. Supp. 2d 1145 (S.D. Cal. 2003) .................................................................................. 11

## TABLE OF AUTHORITIES
### (CONT.)

Page(s)

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)..............................................................................8

*In re Portal Software, Inc. Sec. Litig.*,
2005 WL 1910923 (N.D. Cal. Aug. 10, 2005).......................................................10

*Primo v. Pac. Biosciences of Cal., Inc.*,
940 F. Supp. 2d 1105 (N.D. Cal. 2013) ................................................................2

*Reese v. Malone*
747 F.3d 557 (9th Cir. 2014)...............................................................................14

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)................................................................................7

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008)...............................................................................14

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015)......................................................................4

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999)..........................................................................10, 14

*Siracusano v. Matrixx Initiatives, Inc.*,
585 F.3d 1167 (9th Cir. 2009)..............................................................................8

*In re Snap Inc. Sec. Litig.*,
2018 WL 2972528 (C.D. Cal. June 7, 2018) ..........................................................8

*In re Solarcity Corp. Sec. Litig.*,
274 F. Supp. 3d (N.D. Cal. 2017) ...................................................................12, 13

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
2000 WL 1727377 (N.D. Cal. Sept. 29, 2000) .......................................................3

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)................................................................................4

*In re Taleo Corp. Sec. Litig.*
2010 WL 597987 (N.D. Cal. Feb. 17, 2010) .........................................................14

*In re TUT Sys., Inc. Sec. Litig.*,
2002 WL 35462358 (N.D. Cal. Aug. 15, 2002).......................................................4

# TABLE OF AUTHORITIES
## (CONT.)

**Page(s)**

*In re Twitter, Inc. Sec. Litig.*,
2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ........................................................................ 13

*In re Twitter, Inc. Sec. Litig.*,
506 F. Supp. 3d 867 (N.D. Cal. 2020) ................................................................................... 15

*Union Asset Mgmt. Holding AG v. SanDisk LLC*,
2017 WL 3097184 (N.D. Cal. June 22, 2017) ......................................................................... 9

*Warshaw v. Xoma Corp.*,
74 F.3d 955 (9th Cir. 1996) ..................................................................................................... 9

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018) ................................................................................................. 14

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................................. 13

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ........................................................................................ 2, 3, 4

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ................................................................................................. 12

**Statutes**

15 U.S.C.
§ 78u-5(c)(1)(A)(i) .................................................................................................................. 3

PSLRA .................................................................................................................... 2, 4, 11

## I.    INTRODUCTION

Plaintiff attempts to turn a regulatory development for one of Fastly's customers into securities fraud. But Plaintiff fails to state a claim for securities fraud and the Complaint should be dismissed for a number of independent reasons. Not only does Plaintiff fail to identify the statements he claims are false or misleading (only now claiming they are excerpts with bold and italicized font), but the statements he reproduces in the Complaint are almost entirely forward-looking financial projections and their underlying assumptions that are immunized under the PSLRA's safe harbor. And even if he could survive the safe harbor, Plaintiff does not identify any false or misleading statements. The Complaint does not allege with particularity that Defendants had any duty in May 2020 to disclose that TikTok was a major customer. And the Complaint contains no well-pled facts establishing that Defendants' statements at that time were misleading because Fastly did not disclose that fact. Indeed, Fastly warned investors of the very risk Plaintiff claims was concealed – that international and Chinese customers (which comprised 30% of Fastly's revenues) could be banned by the U.S. government. Once Trump announced an intent to ban TikTok, Defendants disclosed that the social media company was a customer. The Opposition essentially ignores these undisputed facts. Plaintiff also does not plead with particularity that the revenue guidance shared in August 2020 was false or misleading. He relies on articles and analyst reports published long after the Class Period that do not contradict Fastly's projections. Finally, Plaintiff fails to plead a strong inference of scienter. He claims Defendants "knew" they were misleading investors, but cites no document, meeting, email, report, or confidential witness showing what Defendants knew or when, let alone that they had fraudulent intent.

Defendants respectfully request that the Court grant the motion with prejudice.

## II.    ARGUMENT

### A.    Plaintiff Fails to Identify the Statements He Challenges

Plaintiff does not identify which of the nearly four dozen statements and quotes in the Complaint he claims are false and misleading. (*See* ¶¶ 51-96.)[1] He now claims that "bold and

---

[1] All "¶ __" and "¶¶ __" references are to Plaintiff's Complaint (ECF No. 68). All references to "Motion" are to Defendants' Motion to Dismiss Plaintiff's Complaint ("Mot.") (ECF No. 70). All references to "Opp." are to Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF No. 73).

italicized font [] identif[ies] the actionable portions of each quote." (Opp. at 5.) But "Plaintiff may not amend his complaint through an opposition." *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1020 (N.D. Cal. 2020). Nor would such an amendment make sense because Plaintiff's emphasis is inconsistent, nonsensical, and encompasses demonstrably true statements. *Jiangchen v. Rentech, Inc.*, 2017 WL 10363990, at *6 (C.D. Cal. Nov. 20, 2017) ("Plaintiff's use of emphasis is also problematic because it is inconsistent."). For example, Plaintiff emphasizes language in some paragraphs, but not *identical* language elsewhere. (*Compare* ¶ 63 (emphasizing: "We currently receive a substantial portion of our revenues from a limited number of customers") *with* ¶ 83 (no emphasis).) The Complaint should be dismissed for this reason alone.[2]

### B.    Defendants' Forward-Looking Statements are Immunized from Liability Under the PSLRA Safe Harbor

Contrary to Plaintiff's assertion that both prongs need to be met, the PSLRA safe harbor immunizes a forward-looking statement that is *either* (1) "accompanied by meaningful cautionary statements" *or* (2) "made without actual knowledge that it is false or misleading." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189-90 (9th Cir. 2021) (citing 15 U.S.C. § 78u-5(c)(1)). The majority of Defendants' statements contain forward-looking projections, and the assumptions underlying those projections. (Mot. at 10-12 (citing ¶¶ 53, 56, 59, 74, 76, 77, 93).) Thus, the safe harbor applies.

Plaintiff argues that such statements are not forward-looking because they "incorporate elements of present facts." (Opp. at 14.) But forward-looking statements may still be protected if they include present or historical information. *Tesla*, 985 F.3d at 1192. As the Ninth Circuit made clear in *Tesla*, "any announced 'objective' for future operations *necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances." *Id*. Thus, "an unadorned statement that a company is 'on track' to achieve an announced objective, or a simple statement

---

All "Ex." references are to exhibits identified in the Declaration of Janelle M. Fernandes in support of Defendants' Motion (ECF No. 70-1).

[2] Plaintiff argues that he adequately identified the challenged statements because Defendants spent "10 pages of their Motion . . . arguing that they are not actionable." (Opp. at 6.) Defendants' effort to make sense of Plaintiff's scattershot pleading does not excuse this deficiency. *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013) (complaint dismissed where it did not identify challenged statements, even where defendants interpreted it "well enough to draft a motion"); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 843 (N.D. Cal. 2000) (same).

that a company knows of no issues that would make a goal impossible to achieve, *are merely alternative ways of declaring or reaffirming the objective itself*." *Id*. at 1192 (emphasis added).

Defendants' May 6 statements projecting revenue for 2020 (¶¶ 53, 55, 56, 58), and their August 5 revision to that guidance (¶ 76), are quintessentially forward-looking. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010) (an "earnings projection is by definition a forward-looking statement"). The safe harbor also extends to assumptions underlying those projections, even if they convey current or historical circumstances. Just last month, this Court in *Kong v. Fluidigm Corp.*, 2021 WL 3409258, at *9 (N.D. Cal. Aug. 4, 2021) found the following statement of present fact to be forward-looking: "[*W*]*e're seeing* a continuation of the 3-quarter trend[.]" Like the statement in *Fluidigm*, Bixby's statement that the May projections were based on "expected 'continued customer expansion' due to increased internet traffic from social distancing measures" (¶ 56), and Lares' observation that enterprise customers "seem to be in good shape" and he was "not seeing anything . . . concerning from a sort of the Q2 perspective" (¶ 59), are protected by the safe harbor as they simply "reflect[] an implicit assertion that the goal is achievable based on current circumstances." *Tesla*, 985 F.3d at 1192. Similarly, statements that the August revised guidance assumed TikTok usage would remain "status quo" (¶ 77), and that Fastly was in a position to backfill the majority of [any lost TikTok] traffic" (¶¶ 74; 81), are "merely alternative ways of declaring or reaffirming" the guidance and also fall within the safe harbor. *Id*. at 1192.

Tacitly recognizing that Defendants' statements are largely forward-looking and the safe harbor applies, Plaintiff claims that Fastly's purportedly "vague and abstract risks that 'could' or 'may' impact the business" were not meaningful cautionary language. (Opp. at 14.) Again, he is wrong. Fastly identified "important factors that could cause actual results to differ materially from those in the forward-looking statement." *See* 15 U.S.C. § 78u-5(c)(1)(A)(i)); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727377, at *7 (N.D. Cal. Sept. 29, 2000). Fastly's cautionary language was specific and targeted[3], and warned that: customers could terminate usage at any time and for any reason; usage fluctuates for a number of reasons; customers can easily relocate usage; it could not guarantee usage level; and government regulations could prohibit business with

---

[3] In contrast, *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 244 (5th Cir. 2009) involved only a conclusory disclaimer that no statement by the company was a guarantee.

DEFENDANTS' REPLY
ISO MOTION TO DISMISS
4:20-CV-06024-PJH

international customers, especially those in China, which could impact up to 30% of Fastly's revenues. (¶¶ 13, 64, 66; Ex. 5 at 20, 27; Ex. 8 at 47, 55.) These warnings were "meaningful" because they "explicitly identifie[d] the salient risk[s]" and Fastly's forward-looking statements are protected by the first prong of the safe harbor. *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 536 (S.D.N.Y. 2015); *Tesla*, 985 F.3d at 1185, 1193.

Although the Court need not reach the issue, Defendants' forward-looking statements are also protected under the second prong of the PSLRA's safe harbor. To avoid the safe harbor, Plaintiff must plead particularized facts creating "a strong inference" that Defendants had "actual knowledge that the statement[s] [were] false or misleading." *In re Cutera Sec. Litig.*, 610 F.3d at 1112-13. This is a **higher** standard than pleading scienter under the PSLRA. *In re TUT Sys., Inc. Sec. Litig.*, 2002 WL 35462358, at *13 n.11 (N.D. Cal. Aug. 15, 2002). Plaintiff's single conclusory sentence alleging actual knowledge comes nowhere close to meeting this high burden. (*See* Opp. at 19-20); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## C.   Plaintiff Fails to Plead That Any Statement Was False or Misleading

### 1.   The May 2020 Statements Were Not False or Misleading

Plaintiff claims that Defendants misled investors in May by purportedly "touting" (1) "the strength of Fastly's enterprise customers, including their 'good shape,' 'stability,' ability to 'continue to thrive,' the 'limited' credit risk exposure they posed, and the fact that they didn't present 'anything major' or 'concerning,'" (2) "the 'stronger demand' for Fastly's platform, including enterprise customers' 'usage expansion,'" and (3) that "its enterprise customers [were] driving revenue growth and 'continued strong business fundamentals.'"[4] (Opp. at 7.) Plaintiff claims that these categories of statements were misleading because Fastly did not disclose that TikTok was a major customer. *Id.* This argument fails.

**Fastly Had No Duty to Disclose That TikTok Was a Customer.** "Section 10(b) and Rule 10b-5 'do not create an affirmative duty to disclose any and all material information.'" *In re Netflix, Inc. Sec. Litig.*, 647 F. App'x 813, 815 (9th Cir. 2016). To be actionable under an omission theory, a statement must "affirmatively create an impression of a state of affairs that differs in a material

---

[4] Plaintiff does not separately address Bixby's June 2, 2020 statement. (*See* Opp. at 7.) Claims based on June statements fail for the same reasons as May Statements. (*See* Mot. at 13, n.3.)

way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). As a result, a company does not trigger a duty to disclose if it does not "state nor imply" something that is inconsistent with the omitted information. *Id*.

Here, Plaintiff does not contend that Defendants had an affirmative duty to disclose TikTok was a customer. (Opp. at 8.) He instead claims Defendants "touted" Fastly's business by creating the impression that "**none** of Fastly's enterprise customers – let alone, Fastly's single, largest customer – were under U.S. government scrutiny and at risk of being banned in the U.S."[5] (*Id.*) As a result, Plaintiff argues, Fastly undertook an obligation to disclose adverse information cutting against this positive impression, i.e., that TikTok was a customer. (*Id.*) Setting aside whether Fastly "touted" anything in the first place, it disclosed precisely the risk Plaintiff decries – that international and Chinese customers faced regulatory scrutiny and potential bans by the U.S. government, which could impact up to 30% of revenues. (Ex. 5 at 27; Ex. 8 at 55; Ex. 16 at 59.)

*In re Netflix, Inc., Sec. Litig.*, 964 F.Supp.2d 1188, 1193 (N.D. Cal. 2013), is instructive. There, the court found that Netflix did not "tout" its business when it said that switching from DVDs to streaming services would be a positive development, while not disclosing that lower streaming margins would create financial challenges. *Id*. at 1195. The Court found that Netflix did not "tout" its business because it did not "boast about uncertainties." *Id*. Rather, it made a "candid" assessment that streaming would be a positive development while warning investors of financial risks with the transition, which could negatively impact the business. *Id*. Fastly did the same, presenting candid assessments of customer demand, while disclosing risks relating to fluctuations in usage and regulatory scrutiny, as discussed herein.[6] (*See* Sections II, B and C.)

But even if Defendants "touted" Fastly's business, they nonetheless had no duty to disclose TikTok as a customer because their May statements were not inconsistent with the purportedly

---

[5] Plaintiff cites a document referenced in the Complaint with company logos to claim Fastly touted certain customers, while concealing TikTok. (Opp. at 20.) But Plaintiff does not identify the source or purpose of the logo-page, or even plead that the companies listed were Fastly customers. (¶ 9.)

[6] For example, on the May 6, 2021, earnings call, an analyst asked whether Fastly's second quarter revenue guidance incorporated "assumptions for bad debt or contract repricings." (¶ 59.) Lares responded that customers "seem to be in good shape" and he saw nothing "concerning from . . . the Q2 perspective" **with respect to contract repricings or nonpayments**. *Id*. These (and other) statements did not "boast about uncertainties." *Netflix*, 964 F.Supp.2d at 1195.

DEFENDANTS' REPLY
ISO MOTION TO DISMISS
4:20-CV-06024-PJH

omitted information.  Statements about the "strength of [Fastly's 300] enterprise customers" does not imply that TikTok was not one of those customers or that "none" of them were under government scrutiny.  (Opp. at 3, 7.)  Similarly, Fastly's observation that there was "stronger demand" (¶ 58) for its services because of a pandemic says nothing at all about whether TikTok was a Fastly customer, let alone whether it faced a ban.  *See In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *13 (N.D. Cal. Apr. 28, 2020) (statements about online ticket company's enhanced marketing, streamlined checkout, and business opportunities did not trigger duty to disclose problems company encountered with integrating its platform with a subsidiary).

The cases upon which the Opposition relies only reinforce this point, as the challenged statements in those cases tied ***directly*** to the purportedly omitted information.  For example, in *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008), the defendant disclosed that it had tens of millions of dollars of services in its "backlog" (that is, contracted for, but not yet performed), while failing to disclose that customers included in the backlog had issued "stop work orders" – a precursor for termination.  Similarly, in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1016 (9th Cir. 2018), the company disclosed positive interim clinical trial data indicating that a drug might provide a cardiac benefit, while data from the same study showed lack of such benefit.  *See also In re Apple, Inc. Sec. Litig.*, 2020 WL 2857397, at *11 (N.D. Cal. June 2, 2020) (discussing "abnormally high" upgrade rate, while omitting that Apple software forced customers to upgrade).  Plaintiff tries to distinguish *Brody* because the challenged statements there "bore no relationship" to the purportedly omitted information.  (Opp. at 8 n.7.)  But the statements at issue in *Brody* were more connected to the purported omission than Defendants' statements were to the fact that TikTok was a customer.  Indeed, the statements in *Brody* about a stock repurchase program and the undisclosed offer to buy the company at a higher price both related to how much money investors could receive for their stock.  *Brody*, 280 F.3d at 1006.  Here, however, Defendants' statements about demand and customers were true, whether TikTok was a Fastly customer or not.  For example, Fastly's revenue would have still ***increased*** in Q2 without TikTok's business, demonstrating increasing customer demand.  Specifically, in Q2, TikTok generated 13% of Fastly's $75 million revenue (for a total of $9.75 million).  (¶¶ 35, Ex. 16 at 16.)  Without ***any*** TikTok

business, Fastly would have still generated $65.25 million in revenue in Q2 ($75M minus $9.75M) (This is *more* than its revenue generated in Q1, which was $63 million). (¶ 53.) Similarly, enterprise customers increased from 297 in Q1 to 303 in Q2, excluding TikTok. (Ex. 12 at 7.)

**The Purported Risk of a Government Ban Was Disclosed.** Defendants warned investors of the risk that Plaintiff alleges was concealed, which dooms his omission theory. *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 836 (N.D. Cal. 2014) (no liability when overarching risk disclosed). Specifically, Plaintiff claims that Defendants failed to disclose potential "U.S. bans" of Chinese companies that "posed a material risk to Fastly's revenues." (Opp. at 1.) But Fastly did just that, warning investors:

> If the U.S. government *prohibits* our current or potential customers from doing business with us, whether through policy, regulations or laws, we could face direct liability *or our delivery of content by our platform may be blocked. For example, the U.S. government has expressed concerns about the ability of companies operating in China to do business in the U.S. or with U.S. companies., and 29% of our total revenue was generated from customers outside of the United States for the year ended December 31, 2019*. As a result, we could lose the ability to contract with current or potential customers, which could harm our business and reputation.

(Ex. 5 at 27 [emphasis added].) While acknowledging that Fastly disclosed this overarching risk, Plaintiff argues that Defendants should have been more specific because they "said nothing about the known U.S. government investigation and escalating U.S. bans on TikTok." (Opp. at 10-11.) But "Rule 10b- 5 does not contain a 'freestanding completeness requirement' because '[] there are likely to be additional details that could have been disclosed but were not.'" *Intuitive Surgical*, 65 F. Supp. 3d at 836. So long as the disclosed risk is "entirely consistent" with details about the risk that are not disclosed, there is no basis for a securities fraud claim. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th Cir. 2012) ("subsequent release of more extensive information, . . . was not inconsistent with the results that originally were reported").

Plaintiff tries to distinguish *Intuitive Surgical*, by noting that "defendants had warned investors of the exact risk they were facing—product liability claims." (Opp. at 11 n.9.) That is exactly the point, and what makes *Intuitive Surgical* applicable here. There, the company warned of the general risk of potential lawsuits, while not disclosing details, such as the number of claims or the hundreds of adverse event reports. The court held that "while the disclosures may have been

incomplete . . . they were not plausibly misleading because Intuitive made it explicitly clear . . . that products liability lawsuits can and will continue to be a risk to its future revenues." *Id.* at 836. As in *Intuitive Surgical*, Fastly disclosed the risk that the U.S. government may ban international customers, especially those in China, potentially impacting up to 30% of revenue.  (Ex. 5 at 27.)

The known risk to Fastly's business arising from TikTok was encompassed within Fastly's disclosures, and the Complaint does not allege otherwise.  Plaintiff does not point to a single fact to suggest that the stale Committee of Foreign Investment ("CFIUS") investigation in the U.S., which had been pending for at least six months as of May 2020, was anything other than routine. (¶ 18.)  Neither Trump nor his administration had hinted at a ban of TikTok at the time.  And Plaintiff does not explain how military bans of TikTok on employees' ***government-issued*** devices or bans of the application in other countries signaled a future wholesale ban on the application in the U.S.  (*See* Opp. at 9.)  The authority on which Plaintiff relies does not apply here, as in those cases, the risks had already materialized.  *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *6 (C.D. Cal. June 7, 2018) (risk that material adverse trends to user growth already materialized); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009) (warning of product liability claims when the company had already been sued).  Fastly's disclosed risk had not materialized in May 2020 as TikTok was not banned in the U.S. and revenues generated by TikTok were *increasing*.  (*See* ¶ 83.)  Indeed, TikTok revenue increased from Q1 to Q2, as it comprised 12% of Fastly's first half of 2020 revenue; and 13% in Q2 alone.  (*Id.*)

**Corporate Optimism.**  Many of Defendants' statements are inactionable corporate optimism.  (*See, e.g.*, ¶¶ 53, 56- 59, 61, 66, 81.)  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (company "in a pretty good position"); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) ("strong" demand and performance); *Mulligan v. Impax Laboratories, Inc.*, 36 F. Supp. 3d 942, 967 n.2 (N.D. Cal. 2014) ("confident" inactionable).  Plaintiff argues that these statements cannot be dismissed as such because they related to "key factors critical to Fastly's success."  (Opp. at 17.) This makes no sense, as "feel good monikers" and "vague statements of corporate optimism" are not actionable, regardless if they relate to "critical" parts of the business or not.  *Indiana State Dist.*

*Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 943 (6th Cir. 2009) (statements that "revenue and earnings growth outlook remains positive given our strong underlying fundamentals and our proven growth strategy" non-actionable).[7]

### 2. Defendants' August Statements Were Not False or Misleading

Plaintiff argues that Defendants committed fraud in August 2020 by "reassur[ing]" investors that Fastly assumed TikTok's usage in the third quarter would be "status quo" and that Fastly was "in a position to backfill the majority of lost traffic." (Opp. at 12.)  But the Complaint does not plead fraud based on this theory.  As discussed above, these statements about Fastly's anticipated Q3 performance are forward-looking and, along with the assumptions underlying those projections, are protected under the safe harbor.  (*See* Section II, B).  In any event, Defendants made no guarantees or promises to investors.  (*Id*.; ¶¶ 74-75, 81, 92, 94.)  In fact, Bixby was clear that losing TikTok traffic was a risk given Trump's order and that it could not "totally guarantee" that it would backfill lost traffic.  (Ex. 18 at 10; ¶ 83.)  Investors were not plausibly misled into thinking there was any certainty around TikTok's usage in Q3 or later.

Plaintiff points to three purported "facts" to claim that the August Statements were false or misleading: (1) TikTok started shifting traffic away from Fastly five weeks earlier, (2) other Fastly enterprise customers began lowering their usage at the beginning of Q3, and (3) Fastly turned down potential customers during the first half of 2020 because of constraints TikTok's growing usage had put on Fastly's platform.  (Opp. at 12.)  However, these purported "facts" are simply wishful thinking as the Complaint does not contain a single particularized allegation to support any of them.

First, Plaintiff makes "inferential leaps" to allege that TikTok shifted traffic away from Fastly five weeks before the August Statements.  *Greenberg v. Cooper Companies, Inc.*, 2013 WL 2403648, at *11 (N.D. Cal. May 31, 2013) (refusing to make "inferential leap" that defendants must have known of certain patient complaints earlier).  As his only support, Plaintiff cites speculative

---

[7] In Plaintiff's cases, omitted facts directly contradict public statements. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996) (FDA approval "progressing positively," but omitted data making approval unlikely); *Union Asset Mgmt. Holding AG v. SanDisk LLC*, 2017 WL 3097184, at *1 (N.D. Cal. June 22, 2017); ("strong progress in terms of integration," but problems with integration omitted); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1009–10 (N.D. Cal. 2008) ("very confident in the data," but omitted FDA unlikely to approve).  No such allegations exist here.

**DEFENDANTS' REPLY
ISO MOTION TO DISMISS
4:20-CV-06024-PJH**

and conclusory articles and analyst reports. But these "[c]onclusory allegations . . . are no more sufficient if they come from a newspaper article than from plaintiff's counsel." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000). These materials do not identify any sources nor explain how the authors know about TikTok or Fastly traffic. Nor do they include critical details, such as when TikTok began shifting traffic away from Fastly, by how much, and how that indicated anything about future traffic given Fastly's usage-based model.[8] These articles even acknowledge that there is "a lot of speculation over what's currently taking place with the delivery of TikTok [ ] traffic." (Ex. 23 at 2.) Such speculation and conclusory allegations must be rejected by the Court as they are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

Second, and in any event, the articles do not establish the facts for which Plaintiff cites them. Plaintiff cites a *Seeking Alpha* article for the proposition that "TikTok had already shifted traffic five weeks before Defendants made the alleged misstatements." (Opp. at 13.) The article *actually* says that "[a]***round the end of Q2 2020***, TikTok changed their approach to delivering videos and other content and moved to a model that relied on what looked to be almost two dozen different providers globally, large and small." (¶ 113.) According to the article, TikTok did not begin developing its own content delivery network until September 2020, *after* the August statements were made, and third-party CDNs saw additional TikTok traffic on their networks "[s]ince the start of [2021]."[9] (Ex. 23 at 3.) Regardless, the article says nothing about whether (or how) Fastly was impacted at the end of Q2.

Plaintiff mischaracterizes another report to claim that "enterprise customers [] moved traffic away from Fastly at the beginning of 3Q20." (Opp. at 12 (citing ¶ 105).) But the report says no such thing, instead noting that "other large customers were also an issue in Q3." (Ex. 21 at 3.) It

___

[8] Plaintiff attempts to distinguish *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) and *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at *11 (N.D. Cal. Aug. 10, 2005), which require "great detail" to substantiate allegations, by noting those cases involved confidential witnesses and internal reports. However, Plaintiff cites no authority (nor does any exist) that says allegations relying on articles and analyst reports need not comply with the PSLRA's pleading requirements while confidential witness allegations and internal reports do.

[9] Plaintiff abandons his allegation that TikTok had begun developing its own "DIY" content delivery network at the time the August Statements were made. (¶ 90.) He neither references the allegation in his Opposition, nor addresses Defendants' argument on this point. (*See* Mot. at 18.)

does not identify the "issue", indicate when it arose, whether it was known to Fastly in August, or whether it was built into Fastly's Q3 revenue guidance. Nor does Plaintiff allege it would be unusual for customers to move traffic as they "often route traffic across multiple [CDNs]." (Ex. 5 at 12.) Plaintiff's reliance on this report is not sufficient to meet the PSLRA's strict burden.[10]

*Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837 (N.D. Cal. Aug. 17, 2021), decided just two weeks ago, is instructive. There, the plaintiff, citing an analyst report, alleged Enphase misled investors by "fabricat[ing]" nearly 50% of its 2019 revenue. *Id*. The court dismissed the complaint, holding that the report itself, without any additional factual support, was not enough to allege that Enphase misled investors. *Id*. The court explained that the plaintiff did "little more than cherry pick financial data and present such data in a manner favorable to Plaintiff's theory. . . . The PSLRA demands more." *Id*. at 8. Plaintiff here employs the same strategy as he cherry-picks, and overstates, portions of analyst reports. This is not enough to plead fraud under the PSLRA.

<u>Third</u>, Plaintiff claims that "Defendants [ ] do not deny [ ] that TikTok put constraints on Fastly's platform and caused Fastly to turn down business from other companies until the end of 2Q20 when it started shifting traffic away." (Opp. at 12-13.) Again, this is wishful thinking as the Motion notes that Plaintiff offers no facts to support this conclusion. (Mot. at 20.) Nor does it make sense that TikTok could monopolize Fastly's capacity ***while*** moving traffic away, as Plaintiff contends.[11] *Osher v. JNI Corp.*, 302 F. Supp. 2d 1145, 1159 (S.D. Cal. 2003) (ignoring contradictory allegations). Plaintiff does not plead any August statement was false or misleading.

**D.     Plaintiff Fails to Plead a Strong Inference of Scienter**

In order to survive, the Complaint must plead that Defendants made "a highly unreasonable omission" either intentionally or with deliberate recklessness, which constitutes "an extreme

---

[10] Plaintiff also cites a Credit Suisse report to say that "TikTok moved traffic away from Fastly." (Opp. at 13, n.10.) But the report only speculates that TikTok usage declined at some point in the third quarter because "the company redistributed traffic across a number of CDNs, including everything from small regional providers to ISPs." (¶ 102.) The article does not say when this happened, let alone that it happened before the August Statements were made.

[11] Plaintiff argues that none of Defendants' statements were opinions because they were all "framed as facts." (Opp. at 18.) He is wrong. For example, Bixby stated "we ***believe*** we are in a position to backfill the majority of [lost] traffic … ." (¶¶ 72, 74, 81, 92, 94.) These are inacationable opinions as they "inherently reflect the speaker's assessment of and judgment about the underlying circumstances." *Markette v. XOMA Corp.*, 2017 WL 4310759, at *4 (N.D. Cal. Sept. 28, 2017).

departure from the standards of ordinary care, and which  presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  Plaintiff offers four theories that he argues support an inference of scienter: (1) Defendants' had "direct knowledge" they were misleading investors, (2) knowledge within Fastly should be imputed to Bixby and Lares, (3) Defendants' secondary offering shows motive, and (4) Lares and Bixby sold Fastly shares at inflated prices.  (Opp. at 19-25.)  But Plaintiff comes nowhere close to pleading any of these with particularity.  The Complaint simply contains no well-pled allegations, whether considered individually or holistically, that give rise to a strong inference of scienter.

First, Plaintiff fails to adequately allege that Defendants "knew" of "serious risks associated with TikTok being Fastly's largest customer" in May 2020.  (Opp. at 20.)  To meet this burden, Plaintiff must allege that Defendants "saw specific reports," and must plead "references to specific reports and their contents," which informed them their statements were false.  *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d, 972, 1012 (N.D. Cal. 2017).  The Complaint is shockingly sparse in this regard.  Plaintiff does not dispute that he alleges no documents, meetings, conversations, or confidential witness accounts, suggesting that any Defendant believed that: (1) there was any "serious risk" associated with TikTok, (2) the Trump administration would likely ban TikTok, (3) any risk facing TikTok in May was not subsumed within previously disclosed risks, or (4) there was significant risk to Fastly's revenues that was not already disclosed.  The absence of **any** such contemporaneous fact is fatal.  *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *22 (N.D. Cal. Dec. 17, 2019) (no inference of scienter where "Defendants were confronted with news articles and other outside reports regarding Sale Practices").

Instead of pleading contemporaneous facts, the Complaint relies on media rumors and speculation to claim that Defendants "knew the U.S. government was taking aggressive action against TikTok due to the fear that it posed a national security threat because of its ties to China's government." (Opp. at 19.)  Specifically, Plaintiff argues that articles about a CFIUS investigation and U.S. military branches prohibiting use of the application on government-issued devices establish that Defendants intended to defraud investors.  *Id*.  But Plaintiff alleges no facts showing

DEFENDANTS' REPLY
ISO MOTION TO DISMISS
4:20-CV-06024-PJH

Defendants even read those articles, let alone that they shared Plaintiff's subjective and editorialized interpretation of them. *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d at 1013 (rejecting scienter allegations where no facts showed defendants reviewed internal reports that allegedly supported claims). Nor does the Complaint allege that Fastly had information from a credible source, such as TikTok or the U.S. government, that substantiated any of the media rumors. Even if Defendants were aware of this information, Plaintiff fails to plead that these developments were unusual, or that they forewarned a U.S. ban – particularly when only 0.6% of CFIUS investigations lead to government action. (Ex. 9 at 4.) Plaintiff also ignores authority establishing that speculation by third-party articles is insufficient to plead a strong inference of scienter.[12] *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *28 (S.D.N.Y. Sept. 29, 2014) (Wall Street Journal speculation about why Chinese official was arrested insufficient to establish a strong inference of scienter); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1172 (C.D. Cal. 2007) ("[c]onclusory allegations [ ] are no more sufficient if they come from a newspaper article than from plaintiff's counsel….").

With respect to the August Statements, Plaintiff claims that Defendants "knew" about three "facts" that allegedly rendered their projections and underlying assumptions misleading. But Plaintiff does not plead the predicate "facts" in the first instance. (*Supra* Section II.C.1.) Because the August statements are forward-looking, Plaintiff must show that Defendants were aware that the projections could "never" be attained. (*See, supra* Section II.B.) He does not plead a single particularized fact on either point, and cannot establish that Defendants "knew" about them.

<u>Second</u>, Plaintiff relies on the core operations theory to claim that Bixby and Lares were aware of the "disputed information." (Opp. at 21.) But Plaintiff fails to identify what the "disputed information" is. And, Plaintiff tries to extend the core operations doctrine to impute to Defendants information known only to the U.S. government and third-party customers, and outside Fastly's knowledge. The core operations doctrine is "exceedingly rare" and does not permit such inference.

---

[12] Plaintiff concedes SEC rules did not require Defendants to disclose TikTok as a customer in May 2020, but calls this fact a "red herring" because he does not bring claims for failure to comply with SEC rules. Plaintiff misses the point. Plaintiff must plead an ***extreme*** departure from ordinary care, and Defendants' compliance with ordinary standards of care (i.e., SEC rules) cuts against an inference of scienter. *See In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at *10 (N.D. Cal. Apr. 20, 2020) (customs and practices of public companies to prepare disclosures cuts against scienter).

**DEFENDANTS' REPLY
ISO MOTION TO DISMISS
4:20-CV-06024-PJH**

*City of Royal Oak Ret. Sys.,* 880 F. Supp. 2d at 1068.  Plaintiff also relies on Bixby's statement that he would "continue to monitor the [] situation" as "alone [ ] sufficient to raise a strong inference of scienter." (Opp. at 21, ¶ 117.)  However, the Complaint does not identify what, if any, information he learned or when.

To support his argument, Plaintiff relies on cases where defendants had access to specific information contradicting their public statements.  *South Ferry* involved "detailed and specific allegations about management's exposure to factual information within the company." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008).  In *Reese v. Malone,* knowledge of two oil spills was imputed to the British Petroleum executive responsible for overseeing the pipeline and oil spill investigations where a report sent to her flagged specific issues with the pipelines that caused the spill.[13]  747 F.3d 557, 576 (9th Cir. 2014), *overruled by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).  Here, Plaintiff identifies no information available to Bixby or Lares contradicting their statements.

Third, Plaintiff argues that Defendants had a motive to artificially inflate Fastly's stock price to conduct a secondary offering and a merger.  (Opp. at 22.)  But Plaintiff relies on out-of-circuit caselaw and ignores Ninth Circuit authority rejecting that motive alone is sufficient to plead scienter.  *Silicon Graphics*, 183 F.3d at 979.  In any event, an "alleged desire[] to obtain favorable financing" is not adequate motive for fraud.  *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).

Fourth, Plaintiff concedes that ***all*** of Defendants' stock sales during the Class Period were made pursuant to 10b5-1 plans, but claims this is an affirmative defense that cannot be adjudicated at the pleading stage.  (Opp. at 24, n. 21).  Plaintiff further criticizes Defendants for not attaching the trading plans to their Motion.  But courts routinely find that stock sales made under 10b5-1 plans "rebut[s] an inference of scienter," even where the plan is not attached to the motion.  *In re Taleo Corp. Sec. Litig.,* 2010 WL 597987, at *12 (N.D. Cal. Feb. 17, 2010) (relying on Form 4s to find that stock sales pursuant to 10b5-1 plans negated an inference of scienter); *Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059 (N.D. Cal. 2012) ("courts may take judicial notice of SEC Forms

---

[13] The court refused to apply a core operations inference to other defendants, because the complaint did not include particularized facts that they were aware of the information. *Reese,747* F.3d at 576.

DEFENDANTS' REPLY
ISO MOTION TO DISMISS
4:20-CV-06024-PJH

4, even when not referenced in the pleading, to prove that stock sales were made pursuant to a Rule 10b5–1 trading plan"). *See also In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 890 (N.D. Cal. 2020) ("In general, automatic sales made pursuant to Rule 10b5-1 plans do not support a strong inference of scienter."). Plaintiff does not dispute the authenticity of the Form 4s submitted with Defendants' motion, showing the sales were made pursuant to 10b5-1 plans. (*See* Exs. 25-26.)

***Holistically, the Far More Compelling Interference Is that Defendants Acted in Good Faith.*** When the well-pled allegations in the Complaint are considered together, Plaintiff does not create a compelling inference that any Defendant acted with fraudulent intent. In fact, the opposite inference is the only one that can be plausibly drawn from the Complaint. Fastly is, indeed, a stellar example of how SEC disclosure rules are intended to function. Fastly was not required (by either SEC rules or otherwise) to disclose that TikTok was a customer in May. In fact, Plaintiff does not dispute that Fastly complied with SEC rules in disclosing customer identities. Nor does Plaintiff contest that before the Class Period even started, Fastly warned that international and Chinese customers were subject to regulatory scrutiny and could be banned, which could impact up to 30% of revenue. And, as Plaintiff concedes, Fastly voluntarily disclosed TikTok in August after Trump announced a potential ban – a fact that did not exist in May. In doing so, Fastly updated its risk factors to warn how Trump's order may cause TikTok to decrease traffic, which could negatively impact revenue. Plaintiff does not allege a single fact even hinting that Bixby or Lares believed that Trump would ban TikTok prior to August. Plaintiff also ignores the undisputed fact that Fastly voluntarily pre-announced that it expected third quarter revenues to be below publicly-disclosed projections ***before results were even finalized***. At every turn, Fastly was transparent with the market, sharing information *before* it was required to do so. Plaintiff's effort to cobble together a theory of fraud based on a handful of articles and routine corporate transactions does not overcome the overwhelming inference that Defendants acted in good faith. It is unreasonable to conclude that Defendants engaged in some massive fraud. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (rejecting scienter allegations that "d[o] not make a whole lot of sense").

### III.   CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

DEFENDANTS' REPLY
ISO MOTION TO DISMISS
4:20-CV-06024-PJH

Dated: September 1, 2021

COOLEY LLP
JESSICA VALENZUELA SANTAMARIA
BRETT H. DE JARNETTE
JANELLE M. FERNANDES
ANGELICA LEO


By: /s/ Jessica Valenzuela Santamaria
       Jessica Valenzuela Santamaria

Attorneys for Defendants
FASTLY, INC., JOSHUA BIXBY, and
ADRIEL LARES