UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION


IN RE FASTLY, INC. SECURITIES          )   C-20-06024 PJH
LITIGATION,                            )
                                       )   OAKLAND, CALIFORNIA
_____        )
                                       )   NOVEMBER 4, 2021
THIS DOCUMENT RELATES TO:              )
                                       )   PAGES 1-24
     ALL ACTIONS.                      )
                                       )
_____        )


TRANSCRIPT OF ZOOM PROCEEDINGS
BEFORE THE HONORABLE PHYLLIS J. HAMILTON
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR THE PLAINTIFFS:     ROBBINS GELLER RUDMAN & DOWD
                        BY:  LAURIE L. LARGENT
                        655 WEST BROADWAY, SUITE 1900
                        SAN DIEGO, CALIFORNIA  02101


FOR THE DEFENDANTS:     COOLEY LLP
                        BY:  JESSICA VALENZUELA SANTAMARIA
                        3175 HANOVER STREET
                        PALO ALTO, CALIFORNIA  94304


OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

OAKLAND, CALIFORNIA                    NOVEMBER 4, 2021

P R O C E E D I N G S

(ZOOM PROCEEDINGS CONVENED AT 1:53 P.M.)

THE CLERK:  CALLING CIVIL CASE 20-6024-PJH, IN RE: FASTLY, INC. SECURITIES LITIGATION.

COUNSEL MAKING AN APPEARANCE IN THIS CASE, PLEASE RAISE YOUR HAND.

(PAUSE IN PROCEEDINGS.)

THE CLERK:  COUNSEL, PLEASE STATE YOUR APPEARANCES, BEGINNING WITH PLAINTIFFS' COUNSEL.

AND LAURIE, YOU'RE MUTED.

MS. LARGENT:  SORRY.  THANK YOU.

LAURIE LARGENT WITH ROBBINS GELLER RUDMAN & DOWD FOR THE LEAD PLAINTIFFS AND ANDREW ZENOFF.

THE COURT:  GOOD AFTERNOON.

MS. SANTAMARIA:  GOOD AFTERNOON, YOUR HONOR.

JESSICA VALENZUELA SANTAMARIA FROM COOLEY ON BEHALF OF DEFENDANTS FASTLY, JOSHUA BIXBY AND ADRIEL LARES.

THE COURT:  ALL RIGHT.  GOOD AFTERNOON.

ALL RIGHT.  THIS MATTER IS ON FOR A HEARING ON THE DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT.  THIS IS THE SECOND SECURITIES ACTION ON MY DOCKET TODAY.

MS. SANTAMARIA, IT'S YOUR MOTION, SO YOU'LL BE PERMITTED TO GO FIRST.

MS. SANTAMARIA:  THANK YOU, YOUR HONOR.

I WON'T REPEAT ALL OF THE ARGUMENTS IN OUR MOVING PAPERS WHICH DEMONSTRATE A NUMBER OF INDEPENDENT REASONS WHY THE COMPLAINT FAILS TO MEET THE PLEADING BURDEN UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT, BUT I DO WANT TO FOCUS ON JUST A COUPLE OF DEFICIENCIES IN THE COMPLAINT THAT ARE DISPOSITIVE.

THE PLAINTIFFS ALLEGE ESSENTIALLY TWO GROUPS OF STATEMENTS BY DEFENDANTS THAT THEY CLAIM ARE FALSE AND MISLEADING.

THE FIRST RELATES TO STATEMENTS MADE IN MAY 2020 WHEN THE COMPANY REPORTED ITS FIRST QUARTER EARNINGS.

AND THERE PLAINTIFFS ALLEGE THAT A NUMBER OF STATEMENTS ABOUT THE COMPANY'S BUSINESS AND ITS PERFORMANCE FOR THE FIRST QUARTER WERE MISLEADING BECAUSE THE COMPANY DIDN'T DISCLOSE THAT TIKTOK WAS A MAJOR CUSTOMER AT THAT TIME.

AND I WANT TO REMIND THE COURT THAT THE QUESTION HERE ISN'T WHETHER THAT INFORMATION WAS MATERIAL OR WOULD HAVE BEEN INFORMATIVE TO INVESTORS.

THE QUESTION IS WHETHER THE OMISSION OF THAT FACT RENDERED OTHER STATEMENTS MADE BY THE COMPANY TO BE FALSE AND MISLEADING, AND THAT -- THE ANSWER TO THAT QUESTION IS NO, THERE ARE NO OTHER STATEMENTS THAT ARE RENDERED FALSE OR MISLEADING BY THE OMISSION OF TIKTOK'S IDENTITY AS A CUSTOMER.

PLAINTIFFS CONCEDE THAT FASTLY DIDN'T HAVE AN INDEPENDENT DUTY TO DISCLOSE THE IDENTITY OF ANY OF ITS CUSTOMERS IN THE MIDDLE OF A FISCAL YEAR.

AND THE STATEMENTS THAT PLAINTIFFS POINT TO AS FALSE OR MISLEADING BECAUSE OF THAT OMISSION SIMPLY HAVE NOTHING TO DO WITH THE IDENTITY OF ANY CUSTOMERS.

THE COMPANY NEVER SAID TIKTOK WASN'T A CUSTOMER.  THE COMPANY NEVER SAID THAT IT DIDN'T HAVE CUSTOMERS WHO WERE SUBJECT TO POTENTIAL REGULATORY ACTIVITY.

IN FACT, THE COMPANY SAID IN ITS RISK FACTOR DISCLOSURES VERY CLEARLY THAT THERE WAS INCREASED SCRUTINY AROUND CHINESE CUSTOMERS, AND THAT THE COMPANY HAD UP TO 30 PERCENT OF ITS REVENUES IN CHINA AND ABROAD, MAKING IT CLEAR TO INVESTORS THAT IF THERE WAS SOME REGULATORY ACTIVITY TARGETED TO CUSTOMERS IN CHINA, THAT COULD IMPACT UP TO 30 PERCENT OF FASTLY'S BUSINESS.

THE COURT:  IS THERE A PARTICULAR TIME OR EVENT THAT WOULD GIVE RISE TO THE, TO THE NECESSITY OF A DISCLOSURE OF THE IDENTITY OF A CUSTOMER?

MS. SANTAMARIA:  AT THAT TIME, YOUR HONOR, IN MAY 2020, NO.

ITEM 101 OF REG S-K WOULD HAVE REQUIRED FASTLY, AT THE END OF THE FISCAL YEAR, TO DISCLOSE ANY CUSTOMERS WHO COMPRISE MORE THAN 10 PERCENT OF ITS REVENUES.

AND WITH RESPECT TO INCREASED REGULATORY ACTIVITY, AS LONG AS FASTLY DIDN'T MAKE ANY STATEMENTS THAT WERE OTHERWISE MISLEADING BECAUSE OF THE OMISSION OF THAT INFORMATION, THEN, NO, IT DID NOT HAVE A DUTY TO DISCLOSE.

AND IF YOU LOOK AT CASES LIKE RIGEL AND INTUITIVE

SURGICAL, FOR EXAMPLE, THE NINTH CIRCUIT IN RIGEL SAID THE COMPANY THERE HAD RISK FACTORS AND DISCLOSED ADVERSE EVENTS FOR ITS RHEUMATOID ARTHRITIS DRUG.

THE FACT THAT IT DIDN'T DISCLOSE MORE INFORMATION ABOUT THE SPECIFIC SIDE EFFECTS WAS NOT MISLEADING BECAUSE INVESTORS UNDERSTOOD THE BROADER RISK THAT WAS SUBJECT TO THE SAFETY PROFILE OF THE DRUG.

SAME WITH INTUITIVE SURGICAL.  THERE THE COMPANY DISCLOSED THAT, FROM TIME TO TIME, IT HAD PRODUCT LIABILITY LAWSUITS IMPACTING ITS PRIMARY ROBOTIC SURGERY ARM.

THE FACT THAT IT DIDN'T DISCLOSE THE NUMBER OF LAWSUITS, THE FACT THAT THEY WERE INCREASING, OR INCREASED NUMBER OF ADVERSE EVENTS DIDN'T RENDER THAT RISK FACTOR MATERIALLY MISLEADING.

HERE THERE'S NO QUESTION INVESTORS UNDERSTOOD IF THERE WAS INCREASED REGULATION TARGETED AT CHINESE COMPANIES, ABOUT A THIRD OF FASTLY'S BUSINESS COULD BE IMPACTED.

AND I THINK IT'S IMPORTANT TO REMEMBER THAT AS OF MAY 2020 WHEN THOSE STATEMENTS WERE MADE, THERE WAS NO REGULATORY BAN OF TIKTOK OR ANY OTHER CHINESE COMPANY, RIGHT?  AT THAT POINT, IT WAS SIMPLY MEDIA SPECULATION THAT HAD BEEN BREWING SINCE THE BEGINNING OF PRESIDENT TRUMP'S PRESIDENCY.  THERE WAS NO SPECIFIC RISK OR ACTIVITY THAT WAS TARGETED TO TIKTOK AT THAT TIME, OTHER THAN A GENERALIZED -- GENERALIZED NOISE IN THE MARKET.

AND WHEN YOU LOOK AT THE AUGUST STATEMENTS -- SO WHEN FASTLY WENT BACK TO THE MARKET AND REPORTED ITS SECOND QUARTER EARNINGS, BY THAT POINT THE CIRCUMSTANCES HAD CHANGED.  THEN SECRETARY POMPEO, A COUPLE WEEKS BEFORE THAT EARNINGS ANNOUNCEMENT, INDICATED THAT THE ADMINISTRATION WAS LOOKING AT POTENTIALLY BANNING TIKTOK.

A COUPLE DAYS BEFORE THAT EARNINGS ANNOUNCEMENT, PRESIDENT TRUMP, FOR THE FIRST TIME, PUBLICLY STATED THAT HE WAS LOOKING AT POTENTIALLY BANNING TIKTOK.

NO REGULATIONS HAD ACTUALLY BEEN IMPLEMENTED THEN.  IT WASN'T UNTIL AFTER FASTLY DISCLOSED IN AUGUST THAT TIKTOK WAS A MAJOR CUSTOMER, ONLY THEN DID PRESIDENT TRUMP ENTER THE EXECUTIVE ORDER EXPRESSING AN INTENT TO BAN TIKTOK.

AND AT THE TIME THAT HAPPENED, INVESTORS WERE WELL AWARE THAT TIKTOK WAS A CUSTOMER.

UP UNTIL THE -- EVEN AS OF AUGUST 2020, NO RISK HAD MATERIALIZED, AND THE POTENTIAL RISK WAS ALREADY WELL KNOWN TO INVESTORS.

WITH RESPECT TO THE AUGUST STATEMENTS, OF COURSE PLAINTIFFS' THEORY THERE IS DIFFERENT BECAUSE THE IDENTITY OF TIKTOK WAS KNOWN TO THE MARKET.

BUT THEN WHAT PLAINTIFFS ASSERT IS THAT THE COMPANY MADE FALSE AND MISLEADING STATEMENTS WHEN IT GAVE PROJECTIONS ABOUT WHAT ITS Q3 AND FULL YEAR 2020 PERFORMANCE WOULD LOOK LIKE, WHAT IT EXPECTED WOULD HAPPEN IN THE FUTURE.

AND THOSE STATEMENTS ARE IMMUNIZED FROM LIABILITY UNDER THE SAFE HARBOR OF THE PSLRA. THOSE STATEMENTS WERE FORWARD LOOKING. I DON'T THINK THERE'S REALLY ANY QUESTION ABOUT THAT. THEY'RE FINANCIAL GUIDANCE, QUINTESSENTIALLY FORWARD LOOKING. AND THEY WERE ACCOMPANIED BY A MYRIAD OF RISK DISCLOSURES ABOUT ALL OF THE CIRCUMSTANCES THAT MIGHT IMPACT ITS PERFORMANCE.

NOW, PLAINTIFFS POINT TO THE STATEMENT MADE BY JOSHUA BIXBY, THE CEO, THAT THE COMPANY BELIEVED IT COULD BACKFILL ANY TRAFFIC THAT MIGHT BE LOST FROM TIKTOK.

THAT IS A BELIEF AND IT IS FORWARD LOOKING.

THE PLAINTIFFS ALSO QUESTION WHETHER THE PROJECTIONS WERE REASONABLE BECAUSE OF THE PROSPECT THAT TIKTOK TRAFFIC MIGHT BE LOST, AND PLAINTIFFS ALLEGE THAT AT THAT POINT IN AUGUST OF 2020, FASTLY HAD ALREADY LOST TRAFFIC FROM TIKTOK.

NOW, THAT IS SORT OF BESIDE THE POINT. THE STATEMENTS ARE FORWARD LOOKING. THE COURT DOESN'T NEED TO DELVE ANY FURTHER.

BUT TO THE EXTENT IT CONSIDERS PLAINTIFFS' ARGUMENT THAT THOSE PROJECTIONS WEREN'T REASONABLE, THE COMPLAINT DOES NOT PLEAD WITH PARTICULARITY THAT THOSE FACTS WERE TRUE AS OF AUGUST 5TH.

THEY POINT TO ANALYST REPORTS IN OCTOBER AND A "SEEKING ALPHA" ARTICLE IN FEBRUARY OF 2021, MANY MONTHS LATER, THAT SPECULATE ABOUT WHAT TIKTOK MIGHT HAVE DONE WITH ITS TRAFFIC IN THE SECOND HALF OF 2020. THERE'S NO PARTICULARIZED ALLEGATIONS ABOUT WHAT TIKTOK ACTUALLY DID, HOW MUCH TRAFFIC IT

REMOVED FROM FASTLY, WHEN IT DID THAT, AND IMPORTANTLY, WHETHER ANY OF THE DEFENDANTS ACTUALLY KNEW THAT AT THE TIME.

I WANT TO TALK BRIEFLY ABOUT SCIENTER.

THE COMPLAINT DOESN'T PLEAD FALSITY IN THE FIRST INSTANCE, BUT IF THE COURT REACHES THE ELEMENT OF SCIENTER, THE COMPLAINT IS DEFICIENT IN THAT REGARD AS WELL.

YOU KNOW, WHAT THE PLAINTIFFS HAVE TO PLEAD HERE, BECAUSE THIS IS AN OMISSIONS-BASED CASE, ISN'T THAT DEFENDANTS KNEW TIKTOK WAS A CUSTOMER.  THAT'S NOT ENOUGH.

THEY HAVE TO PLEAD THAT THE DEFENDANTS KNEW, OR WERE DELIBERATELY RECKLESS IN NOT KNOWING, THAT THE FAILURE TO DISCLOSE THAT INFORMATION WOULD MISLEAD THE MARKET.

AND WHEN YOU LOOK AT THE MAY STATEMENTS AND WHAT THE RISK DISCLOSURES WERE ABOUT REGULATORY RISK IN CHINA, THERE'S NO REASONABLE INFERENCE THAT CAN BE DRAWN FROM THE COMPLAINT THAT THE INDIVIDUAL DEFENDANTS, THAT THEIR CONDUCT IN NOT DISCLOSING TIKTOK WAS AN EXTREME DEPARTURE FROM THIS STANDARD OF ORDINARY CARE.  THEY DISCLOSED A THIRD OF THEIR BUSINESS WAS SUBJECT TO THIS RISK.

AND IN AUGUST, WITH RESPECT TO WHAT WAS HAPPENING WITH TIKTOK AND ITS TRAFFIC ONE MONTH INTO Q3, THERE ISN'T A SINGLE ALLEGATION IN THE COMPLAINT AT ALL ABOUT WHAT WAS IN THE STATE OF MIND OF EITHER JOSHUA BIXBY OR ADRIEL LARES AT THAT TIME, NOT A SINGLE ALLEGATION.  THERE'S NO CONFIDENTIAL WITNESS, THERE'S NO INTERNAL REPORT OR EMAIL OR MEETING THAT AT ALL

TALKS ABOUT WHAT ANY DEFENDANT KNEW ABOUT TIKTOK TRAFFIC AT THE TIME.

INDEED, THE RECORD BEFORE THE COURT SHOWS THAT THE COMPANY ASSUMED TIKTOK TRAFFIC WOULD BE STATUS QUO BASED ON WHAT IT HAD SEEN A MONTH INTO Q3.

NOW, PLAINTIFF DOESN'T CHALLENGE THAT TIKTOK BASED ITS -- I'M SORRY -- THAT FASTLY BASED ITS PROJECTIONS BASED ON TRAFFIC IT HAD SEEN UP THROUGH THE FIRST MONTH OF Q3, AND THE FACT THAT INVESTORS KNEW THAT FASTLY WAS ASSUMING STATUS QUO MEANS THAT THAT COULDN'T HAVE BEEN MISLEADING, RIGHT?

FASTLY DISCLOSED TO INVESTORS IT COULD LOSE THAT BUSINESS, AND INVESTORS WOULD HAVE UNDERSTOOD THAT IF IT DID LOSE THAT BUSINESS, THAT THOSE ASSUMPTIONS AND THE PROJECTIONS FOR Q3 COULD CHANGE.

I ALSO WANT TO POINT OUT, YOUR HONOR, THAT THE GENERALIZED STATEMENTS THAT PLAINTIFF CHALLENGE, STATEMENTS OF OPTIMISM ABOUT DEMAND FOR FASTLY'S PLATFORM AND FEELINGS OF CONFIDENCE AROUND ITS ENTERPRISE BUSINESS IN Q1, ALL OF THOSE WERE TRUE.

WHEN YOU LOOK AT THE COMPANY'S PERFORMANCE AS BETWEEN Q1 AND Q2, ITS METRICS ACROSS THE BOARD WERE IMPROVING.  IN Q2, FASTLY HAD GREATER REVENUE THAN IN Q1.  IT HAD INCREASED ITS PERCENTAGE REVENUE GROWTH.  IT HAD INCREASED ITS ADJUSTED EBITDA, IN FACT, REPORTING A POSITIVE EBITDA FOR THE FIRST QUARTER IN HISTORY.

AND THIS NOTION THAT THERE WAS A RISK THAT IS UNKNOWN TO

INVESTORS IN MAY THAT SOMEHOW IMPACTED THE COMPANY'S BUSINESS IN Q2 JUST IS NOT SUPPORTED BY THE ALLEGATIONS IN THE COMPLAINT OR BY FASTLY'S HISTORICAL PERFORMANCE.

AND THERE'S NOTHING IN THE COMPLAINT THAT SUGGESTS THAT DEFENDANTS, WHEN THEY MADE THE STATEMENTS TO THE MARKET, WERE ANYTHING BUT FULLY INFORMED AND TRANSPARENT AND ADEQUATELY SHARED WITH INVESTORS THE RISK AS MANAGEMENT UNDERSTOOD IT AT THE TIME.

THANK YOU.

THE COURT:  ALL RIGHT.  MS. LARGENT?

MS. LARGENT:  THANK YOU, YOUR HONOR.

I WOULD ALSO LIKE TO BE AS BRIEF AS I POSSIBLY CAN WITHOUT, YOU KNOW, REPEATING EVERYTHING THAT'S IN OUR BRIEFS. I FEEL LIKE ALL OF THE ISSUES ARE WELL BRIEFED.

BUT I DO WANT TO RESPOND TO SOME OF THE ARGUMENTS THAT WERE MADE REGARDING THE STATEMENTS AND THE VIABILITY OF THE STATEMENTS BECAUSE I THINK THAT'S ONE OF THE BIGGER ISSUES IN THE CASE, AND ALSO THE SCIENTER ISSUE.

SO IT'S CORRECT TO SAY THAT THIS CASE BASICALLY BREAKS DOWN INTO TWO PARTS.  THE FIRST PART ARE THE ALLEGATIONS THAT THE MAY 2020 STATEMENTS WERE FALSE AND MISLEADING BY OMISSION BECAUSE THE COMPANY FAILED TO DISCLOSE THAT ITS LARGEST CUSTOMER WAS UNDERGOING SEVERE, SERIOUS PROBLEMS AT THE TIME THAT POSED A RISK TO FASTLY'S REVENUE.

ON MAY 6TH, DEFENDANTS ISSUED A SHAREHOLDER LETTER, HELD

AN EARNINGS CONFERENCE CALL, REPORTING 1Q FINANCIAL RESULTS WHICH EXCEEDED EXPECTATIONS BY ALMOST EVERY METRIC, AND DEFENDANTS SPECIFICALLY TOLD INVESTORS THAT FASTLY'S ENTERPRISE CUSTOMERS WERE THE REASON THAT THE RESULTS WERE SO GOOD AND WERE THE COMPANY'S PRIMARY GROWTH DRIVER.

AND THE REASON THESE STATEMENTS WERE MISLEADING WAS NOT BECAUSE THE RESULTS WERE INACCURATE, BUT BECAUSE DEFENDANTS FAILED TO DISCLOSE THAT TIKTOK, WHO WAS THE TOP ENTERPRISE CUSTOMER, HAD POSED -- WAS POSING A SERIOUS THREAT TO REVENUE AND GROWTH BECAUSE IT WAS BEING INVESTIGATED AS A NATIONAL SECURITY THREAT, WHICH IS NO SMALL ISSUE; HAD BEEN BANNED BY -- IN THE U.S. BY THE BEGINNING OF THE CLASS PERIOD BY ALMOST EVERY BRANCH OF THE MILITARY; WAS BEING INVESTIGATED BY CFIUS, A COMMITTEE THAT REPORTED TO THEN PRESIDENT DONALD TRUMP WHO, AT THE TIME, WAS OPENLY HOSTILE TO COMPANIES IN CHINA DOING BUSINESS IN THE U.S.; AND CONGRESS WAS TAKING STEPS BY THE BEGINNING OF THE CLASS PERIOD TO LEGISLATIVELY BAN MILLIONS OF FEDERAL EMPLOYEES FROM USING TIKTOK, ALL OF WHICH POSED A THREAT TO FASTLY'S REVENUE AND GROWTH.

SO THE ARGUMENT THAT THERE WERE NO REGULATIONS ENACTED AT THE BEGINNING OF THE CLASS PERIOD REALLY ISN'T THE POINT. FASTLY -- EXCUSE ME.  TIKTOK WAS UNDERGOING BANS ALREADY BY THE TIME, THE BEGINNING OF THE CLASS PERIOD, AND THERE WERE SOME SERIOUS INVESTIGATIONS GOING ON INTO FASTLY.

SO IT WASN'T SOMETHING THAT HAPPENED LATER ON IN THE CLASS

PERIOD, BUT AT THE BEGINNING OF THE CLASS PERIOD THESE ISSUES WERE GOING ON FOR FASTLY'S LARGEST CUSTOMER.

SO WHEN THE PRIMARY SOURCE OF A COMPANY'S REVENUE IS AT RISK BECAUSE ITS LARGEST CUSTOMER IS FACING SERIOUS PRESSURES LIKE TIKTOK WAS, IT'S PLAUSIBLE THAT THIS TYPE OF INFORMATION COULD BE IMPORTANT TO INVESTORS.

SO I THINK THE COURT, IN AN OMISSIONS CASE, OR ANY ISSUE OF FALSITY, DOES HAVE TO LOOK AT THE MATERIALITY OF THE INFORMATION THAT WAS ALLEGED TO BE OMITTED.

AND I THINK THAT THESE STATEMENTS -- ONE OF THE ARGUMENTS THAT DEFENDANTS MAKE IS THESE STATEMENTS AREN'T ACTUAL BECAUSE THEY'RE ACCURATE STATEMENTS OF HISTORICAL FACT.

BUT I THINK MILLER VERSUS THANE IS ON POINT THERE WHERE IT SAYS, "AN ISSUER'S PUBLIC STATEMENTS CANNOT BE ANALYZED IN COMPLETE ISOLATION.  SOME STATEMENTS, ALTHOUGH LITERALLY ACCURATE, CAN BECOME, THROUGH THEIR CONTEXT, A MATTER OF PRESENTATION DEVICES WHICH MISLEAD INVESTORS."

AND IN THE APPLE SECURITIES LITIGATION MOTION TO DISMISS OPINION IN THE NORTHERN DISTRICT, JUDGE ROGERS WROTE THAT "WHERE A PARTY GOES BEYOND DESCRIBING HISTORICAL RESULTS AND TOUTS SPECIFIC FACTORS DRIVING THOSE RESULTS, IT'S OBLIGATED TO DISCLOSE THE NEGATIVE INFORMATION RELATED TO THOSE FACTORS."

SO HERE WHERE THE ALLEGATION IS THAT AS FASTLY WAS TOUTING THE SUCCESS AND IMPRESSIVE RESULTS BASED OFF ITS ENTERPRISE CUSTOMERS, IT WAS FAILING TO DISCLOSE THAT ITS TOP ENTERPRISE

CUSTOMER WAS HAVING PROBLEMS THAT WERE CREATING RISKS FOR THE COMPANY.

AND THE CONTEXT HERE IS NOT ONLY THAT DEFENDANTS ARE REPORTING IMPRESSIVE RESULTS FOR 1Q, THEY'RE ALSO TELLING INVESTORS THAT REVENUE GREW BY 38 PERCENT.

AND THE 1Q RESULTS WERE A BOON TO FASTLY.  THE STOCK PRICE JUMPED OVER 45 PERCENT WHEN THE FIRST QUARTER RESULTS WERE REPORTED.

AND ANOTHER POINT ABOUT THE CONTEXT IS THAT DURING THE CONFERENCE CALL WITH INVESTORS WHERE BIXBY REPEATED THE FIRST QUARTER FINANCIAL RESULTS AND AGAIN ATTRIBUTED SUCCESS OF ITS ENTERPRISE CUSTOMERS TO THE RESULTS IN 1Q, DEFENDANTS PRESENTED A SLIDE SHOW NAMING OVER 20 OF ITS TOP DIGITAL CUSTOMERS, INCLUDING TWITTER, PINTEREST, REDDIT, BUT CONSPICUOUSLY LEFT OFF TIKTOK EVEN THOUGH IT WAS FASTLY'S LARGEST CUSTOMER.

SO DEFENDANTS MAKE THE ARGUMENT THAT THE STATEMENTS CAN'T BE MISLEADING BECAUSE THE COMPANY NEVER IMPLIED THAT TIKTOK WAS NOT A CUSTOMER.

BUT CERTAINLY BY PRESENTING THE NAMES OF ITS TOP DIGITAL CUSTOMERS AND LEAVING TIKTOK OFF, IT WAS SUGGESTING THE OPPOSITE.

IT HAD NO OBLIGATION, AS IT WAS COMMENTED ON, TO DISCLOSE THE NAMES OF THOSE CUSTOMERS, BUT THEY DID ANYWAY.

AND IN THE SAME CALL, DEFENDANTS ALSO TOUTED THE HIGH QUALITY OF ITS ENTERPRISE CUSTOMERS, WHICH IMPLIED THAT GROWTH

WOULD CONTINUE.  IT SAID, "WE PARTNER WITH THE MOST TECHNOLOGICALLY ADVANCED AND CREATIVE COMPANIES WHO WE BELIEVE NOT ONLY WILL WEATHER THIS STORM, BUT WILL CONTINUE TO THRIVE IN THIS ENVIRONMENT."

AND DEFENDANTS SAY THAT THAT'S CORPORATE PUFFERY.  THAT'S ONE OF THE EXAMPLES OF THE CORPORATE PUFFERY ARGUMENT.

BUT THAT IGNORES THE CONTEXT IN WHICH THIS STATEMENT WAS MADE, BECAUSE THIS STATEMENT SPECIFICALLY ADDRESSES THE QUALITY OF FASTLY'S CUSTOMERS WHEN, IN FACT, TIKTOK'S BUSINESS WAS UNDER SERIOUS ATTACK AS A NATIONAL SECURITY THREAT AND WAS BEING BANNED IN THE U.S.

THE TRUTH WAS THAT THE COMPANY'S REVENUES AND GROWTH HAD BECOME FAR RISKIER GIVEN TIKTOK'S SITUATION, AND IF INVESTORS HAD KNOWN ABOUT THE TRUTH, THAT WOULD HAVE DIMINISHED THE WEIGHT OF FASTLY'S FIRST QUARTER RESULTS GIVEN THAT THEY WERE DRIVEN IN PART BY TIKTOK REVENUE BECAUSE TIKTOK WAS ITS LARGEST ENTERPRISE CUSTOMER.

SO FOR THESE REASONS, WE BELIEVE THAT THE MAY 2020 STATEMENTS ABOUT FASTLY'S ENTERPRISE CUSTOMERS ARE ACTIONABLE.

THE NEXT GROUP OF STATEMENTS ARE THE RISK DISCLOSURES THAT ARE IDENTIFIED IN FASTLY'S 10-Q THAT WAS FILED ON MAY 8, 2020, AND WE -- AGAIN, WE ALLEGE THAT THESE RISK DISCLOSURES WERE FALSE STATEMENTS.  I MEAN, AT BEST THEY WERE HALF TRUTHS.  I MEAN, FOCUSSING ON WARNINGS CONCERNING TRADE TENSIONS WITH CHINA IS, IS NOT THE SAME AS DISCLOSING THAT YOUR TOP CUSTOMER

IS BEING BANNED IN THE U.S., BY THE U.S. MILITARY, AND CONGRESS IS PROPOSING LEGISLATION TO BAN TIKTOK FOR MILLIONS OF FEDERAL EMPLOYEES AND THE COMPANY IS UNDER INVESTIGATION BY CFIUS.

DISCLOSURE OF TIKTOK AS FASTLY'S SINGLE LARGEST CUSTOMER WOULD HAVE BEEN MATERIAL TO UNDERSTANDING THE COMPANY'S BUSINESS AS A WHOLE GIVEN THE SITUATION AND THAT IT WAS FASTLY'S LARGEST CUSTOMER.

THERE'S A SIGNIFICANT DIFFERENCE BETWEEN THE POSSIBLE RISK OF HARM TO YOUR BUSINESS DUE TO GENERAL ECONOMIC TRADE ENVIRONMENT VERSUS LOSING BUSINESS BECAUSE YOUR TOP CUSTOMER IS CURRENTLY BEING BANNED BY THE U.S. MILITARY AS A NATIONAL SECURITY THREAT AND BEING INVESTIGATED BY A PRESIDENTIAL COMMITTEE FOR NATIONAL SECURITY BREACHES.

SO THIS RISK DISCLOSED REALLY ONLY HALF THE TRUTH AND WAS A GLARING OMISSION OF MATERIAL INFORMATION ABOUT A CUSTOMER THAT CONTRIBUTED OVER 10 PERCENT REVENUE TO THE COMPANY.

THE OTHER --

THE COURT:  WOULD A COMPANY THAT CONTRIBUTED 5 PERCENT REVENUE STILL PRESENT THE SAME REQUIREMENT IN YOUR VIEW?

MS. LARGENT:  YOUR HONOR, THE REASON I USE 10 PERCENT IS THAT IS WHAT THE -- WHAT THE S.E.C. LOOKS AT IN TERMS OF MATERIALITY FOR AN INVESTOR AS WAS DISCUSSED EARLIER, THAT BEFORE THE CLASS PERIOD STARTED, FASTLY DID DISCLOSE AND WAS REQUIRED TO DISCLOSE THAT IT HAD ONE CUSTOMER WHO GENERATED

OVER 10 PERCENT OF ITS REVENUE, AND THEY DIDN'T DISCLOSE THE NAME OF THAT CUSTOMER, BUT WE ALLEGE THAT THAT CUSTOMER WAS TIKTOK.

SO THAT'S WHERE WE GET -- THAT'S WHAT WE CONSIDER MATERIAL IS AT THE 10 PERCENT.  BUT --

THE COURT:  OKAY.

MS. LARGENT:  -- I'M GOING TO JUMP TO THE STATEMENTS, JUST STICKING WITH THE STATEMENTS HERE, THE AUGUST GROUP OF STATEMENTS -- AND I'LL BE BRIEF ABOUT THIS -- THE STATEMENTS MADE IN AUGUST ABOUT TIKTOK REVENUE REMAINING STATUS QUO AND FASTLY BEING ABLE TO BACKFILL ANY LOST TIKTOK TRAFFIC, OUR POSITION IS THAT THESE STATEMENTS ARE NOT PROTECTED BY THIS SAFE HARBOR BECAUSE THEY WERE NOT FORWARD LOOKING.

THE STATEMENTS THAT FASTLY WOULD BE ABLE TO BACKFILL LOST TRAFFIC AND THAT TIKTOK REVENUE WAS REMAINING STATUS QUO WERE STATEMENTS OF PRESENT FACT AND FACTUAL AFFIRMATIONS THAT DEFENDANTS USED TO COMFORT INVESTORS ABOUT FASTLY'S POTENTIAL EXPOSURE IN THE FACE OF LOSING TIKTOK REVENUE.

AND I THINK DEFENDANTS SEEM TO SUGGEST THAT ANY STATEMENTS MADE IN CONNECTION WITH THE WORD "GUIDANCE" WOULD WARRANT SAFE HARBOR PROTECTION, BUT THAT'S NOT THE CASE.

EVEN THE TESLA CASE ON WHICH DEFENDANTS RELY STATES THAT "THE SAFE HARBOR DOES NOT APPLY IN AN ALL-OR-NOTHING FASHION BECAUSE SOME STATEMENTS ABOUT THE FUTURE MAY COMBINE NON-ACTIONABLE FORWARD-LOOKING STATEMENTS WITH SEPARABLE AND

ACTIONABLE NON-FORWARD-LOOKING STATEMENTS.  IN THE CONTEXT OF SUCH MIXED STATEMENTS, ONLY THE FORWARD-LOOKING ASPECTS CAN BE IMMUNIZED FROM LIABILITY BECAUSE THE SAFE HARBOR IS NOT DESIGNED TO PROTECT ISSUERS WHEN THEY ARE MATERIALLY FALSE OR MISLEADING STATEMENTS ABOUT CURRENT OR PAST FACTS AND COMBINE THE STATEMENTS WITH FORWARD-LOOKING STATEMENTS."

AND WE BELIEVE THAT'S THE SITUATION HERE.

AND EVEN IF THE STATEMENTS WERE ARGUABLY FORWARD LOOKING, THE ALLEGED RISK DISCLOSURES BY AUGUST 2020 WERE NOT MEANINGFUL BECAUSE THE RISK OF FASTLY MOVING TRAFFIC OFF OF -- EXCUSE ME. THE RISK OF TIKTOK MOVING TRAFFIC OFF OF FASTLY'S PLATFORM WAS ALREADY OCCURRING, AND THE COMPLAINT ALLEGES THAT DEFENDANTS KNEW THIS BECAUSE THEY ADMITTED IN AUGUST THAT THEY WERE CLOSELY WATCHING TIKTOK.

WITH REGARD TO SCIENTER, THE COMPLAINT PREDOMINANTLY RELIES ON THE CORE OPERATIONS THEORY, AND THAT GIVES PLAINTIFFS A FEW WAYS TO ALLEGE KNOWLEDGE OF A COMPANY'S CORPORATE OFFICERS FOR PURPOSES OF SCIENTER.

AND ONE OF THOSE IS WHEN RELEVANT INFORMATION -- AND HERE IT'S THE ALLEGED OMITTED INFORMATION -- IS OF SUCH PROMINENCE THAT IT WOULD BE ABSURD TO SUGGEST THAT MANAGEMENT WAS WITHOUT KNOWLEDGE OF THE MATTER.

AND THAT'S LANGUAGE FROM SOUTH FERRY, YOUR HONOR, WHICH IS THE CASE FROM WHICH THE CORROBORATIONS THEORY STEMS.

HERE THE RELEVANT INFORMATION, AGAIN, IS THAT TIKTOK,

FASTLY'S LARGEST CUSTOMER, WAS FACING BANS BY THE U.S. MILITARY, CONGRESS, IT WAS BEING INVESTIGATED BY CFIUS, AND THAT POSED A HEIGHTENED RISK TO FASTLY'S REVENUE AND GROWTH.

AND BIXBY AND LARES, THE INDIVIDUAL DEFENDANTS, WERE FASTLY'S TOP EXECUTIVES AND WERE DIRECTLY RESPONSIBLE FOR DAY-TO-DAY OPERATIONS OF THE COMPANY, SO IT'S HARD TO BELIEVE THEY WOULD NOT HAVE KNOWN THAT TIKTOK WAS FASTLY'S LARGEST CUSTOMER BY THE START OF THE PERIOD, BY THE START OF THE CLASS PERIOD.  AND, IN FACT, THEY DON'T REALLY CHALLENGE THAT IN THEIR MOTION.

SO IT'S -- ALSO, THE U.S. BANS AND THE CFIUS INVESTIGATION TIKTOK WAS FACING AT THE START OF THE CLASS PERIOD WERE WELL PUBLICIZED BY MAJOR MEDIA SOURCES, INCLUDING "THE WASHINGTON POST" AND "REUTERS" AND WERE MAKING NATIONAL HEADLINES.

AND WHEN YOUR LARGEST CUSTOMER IS BEING TARGETED AS A NATIONAL SECURITY THREAT BECAUSE OF ITS TIES TO CHINA, IT IS BEING BANNED BY EVERY BRANCH OF THE MILITARY, AND CONGRESS IS MOVING TO PASS LEGISLATION TO BAN IT FOR MILLIONS OF FEDERAL EMPLOYEES, AND ALL OF THIS IS BEING REPORTED AS NATIONAL NEWS, AGAIN, IT'S HARD TO BELIEVE THAT DEFENDANTS WOULD NOT HAVE KNOWN ABOUT TIKTOK'S BANNING PROBLEMS BY THE START OF THE CLASS PERIOD.

AND SO UNDER -- IT IS A RARE CIRCUMSTANCE UNDER SOUTH FERRY WHERE INFORMATION ALONE IS PROMINENT ENOUGH TO MAKE IT ABSURD TO SUGGEST THAT A COMPANY'S TOP MANAGEMENT DID NOT

KNOW ABOUT THE FACTS THAT WERE ALLEGED TO BE OMITTED, BUT I BELIEVE -- I BELIEVE THIS IS ONE OF THOSE CASES.

ALSO, DEFENDANTS' PUBLIC STATEMENTS AND RISK DISCLOSURES THEMSELVES REITERATE THAT DEFENDANTS WERE MONITORING ITS CUSTOMERS, INCLUDING TIKTOK.  IN THEIR MAY STATEMENTS, DEFENDANTS TALK TO INVESTORS ABOUT THEIR CONFIDENCE IN FASTLY'S CUSTOMERS, STATING THEY'RE WEATHERING THE STORM, THRIVING IN THIS ENVIRONMENT, SEEM TO BE IN GOOD SHAPE, WHICH IMPLIES THAT DEFENDANTS WERE MONITORING FASTLY'S CUSTOMERS.

AND ALSO, WHEN DEFENDANTS DISCLOSED TIKTOK HAD BEEN FASTLY'S LARGEST CUSTOMER, BIXBY CONFIRMED THAT WE CONTINUE TO MONITOR THE TIKTOK SITUATION CLOSELY.

THUS, IT WOULD BE HARD TO BELIEVE THAT THEY WOULD NOT HAVE KNOWN THAT TIKTOK WAS STARTING TO MOVE ITS TRAFFIC OFF FASTLY'S PLATFORM WHEN THAT STATEMENT WAS MADE.

DEFENDANTS ARGUE THAT THE COMPLAINT DOESN'T ALLEGE THAT DEFENDANTS SAW SPECIFIC REPORTS SHOWING THAT TIKTOK WAS FASTLY'S LARGEST CUSTOMER OR WAS BEING BANNED IN THE U.S., BUT SOUTH FERRY, OR OTHER NINTH CIRCUIT CASES FOLLOWING SOUTH FERRY, DON'T REQUIRE THAT.

FOR EXAMPLE, IN BERSON VERSUS APPLIED SIGNAL TECHNOLOGY, THE NINTH CIRCUIT FOUND IT ABSURD THAT TOP MANAGEMENT WOULD NOT HAVE KNOWN ABOUT STOP WORK ORDERS THAT HALTED MILLIONS OF DOLLARS OF OPERATION, EVEN THOUGH PLAINTIFFS ALLEGED NO PARTICULAR FACTS INDICATING THAT DEFENDANTS ACTUALLY KNEW ABOUT

THE STOP WORK ORDERS.

SO, AGAIN, THE COMPLAINT PREDOMINANTLY RELIES ON A CORROBORATIONS THEORY FOR THE SCIENTER COMPONENT, AND IT'S ALSO FORTIFIED BY THE MOTIVE ALLEGATIONS, WHICH HERE ARE THAT THE COMPLAINT ALLEGES THAT DEFENDANTS INTENTIONALLY OMITTED TO WARN INVESTORS ABOUT THE RISKS RELATED TO TIKTOK AT THE BEGINNING OF THE CLASS PERIOD IN ORDER TO COMPLETE A PUBLIC OFFERING THAT RAISED OVER $270 MILLION OF NEEDED CAPITAL FOR THE COMPANY.

AND THE COMPLAINT ALSO ALLEGES THAT DEFENDANTS WERE MOTIVATED TO KEEP FASTLY'S STOCK ARTIFICIALLY INFLATED AFTER THE AUGUST 2020 DISCLOSURES IN ORDER TO FUND ITS ACQUISITION OF SIGNAL SCIENCE.

SO THOSE TWO MOTIVE ALLEGATIONS, WHICH ARE NOT NECESSARY, JUST FORTIFY THE CORE OPERATIONS INFERENCE.

YOUR HONOR, I BELIEVE THAT ANY ISSUES I HAVEN'T ADDRESSED ARE FULLY BRIEFED BY BOTH PARTIES.  I'M HAPPY TO ANSWER ANY QUESTIONS THAT YOU HAVE.

THE COURT:  ALL RIGHT.  NO QUESTIONS.

MS. SANTAMARIA, YOU GET THE LAST WORD.

MS. SANTAMARIA:  THANK YOU, YOUR HONOR.  I'LL KEEP IT BRIEF, YOUR HONOR.

WITH RESPECT TO MAY, IT SEEMS LIKE PLAINTIFF IS ESSENTIALLY ARGUING THAT FASTLY SHOULD HAVE DISCLOSED MORE INFORMATION ABOUT THE RISK.  THEY SHOULD HAVE DISCLOSED MORE THAN THAT 30 PERCENT OF FASTLY'S CUSTOMERS WERE SUBJECT TO

REGULATORY RISKS.

I SUSPECT THAT IF FASTLY HAD DISCLOSED IN MAY THAT TIKTOK WAS ITS ALLEGEDLY LARGEST CUSTOMER, IT'S TRUE THAT THAT -- THAT THAT ISSUE HASN'T BEEN ADEQUATELY PLEADED IN THE COMPLAINT, BUT ASSUMING FOR SAKE OF ARGUMENT FASTLY WAS THE LARGEST CUSTOMER IN Q1, IF FASTLY HAD DISCLOSED THAT, I SUSPECT WE MIGHT BE HERE WITH PLAINTIFFS ARGUING THAT FASTLY TRIED TO MINIMIZE THE RISK BY SUGGESTING THAT ONLY 10 PERCENT OF ITS BUSINESS WAS SUBJECT TO REGULATORY RISK IN CHINA.

TIKTOK WASN'T FASTLY'S ONLY CUSTOMER THAT WAS FROM CHINA AND WAS SUBJECT TO WHAT I THINK WE CAN ALL AGREE WOULD BE PRESIDENT TRUMP'S UNPREDICTABILITY.  NOBODY KNEW WHAT PRESIDENT TRUMP WAS GOING TO DO, WHETHER HE WOULD TARGET TIKTOK OR WHETHER IT WOULD BE SOME OTHER CHINESE COMPANY.

BUT THE FACT IS, INVESTORS UNDERSTOOD THAT UP TO 30 PERCENT OF FASTLY'S BUSINESS WAS SUBJECT TO THIS RISK.  THAT TIKTOK WAS A SUBSET OF THAT RISK IS NOT ADDITIONAL INFORMATION THAT MAKES THAT RISK FACTOR OTHERWISE MISLEADING.

AND THE NINTH CIRCUIT IN RIGEL AND THE NINTH CIRCUIT IN BRODY HAVE MADE IT EXPLICITLY CLEAR, THERE IS NO COMPLETENESS REQUIREMENT UNDER THE FEDERAL SECURITIES LAWS.

AND I WANT TO REMIND THE COURT THAT THE S.E.C. HAS SET UP A PERIODIC DISCLOSURE REGIME.  IT DOESN'T REQUIRE COMPANIES TO GO TO THE MARKET THE MINUTE RISKS CHANGE.

IN MAY WHEN THE COMPANY DISCLOSED THE RISK OF REGULATIONS

IN CHINA, IT DISCLOSED UP TO 30 PERCENT OF ITS BUSINESS.

NOW, THAT RISK PROFILE CHANGED BY THE TIME THE COMPANY REPORTED ITS RESULTS FOR Q2.  THAT'S BEFORE ANY BAN WAS ACTUALLY IN PLACE.

AND WHILE PLAINTIFF POINTS TO MILITARY H.R. POLICIES THAT RESTRICT THE USE OF GOVERNMENT-ISSUED DEVICES, THERE'S NO ALLEGATION THAT ANY OF THOSE MILITARY H.R. POLICIES ACTUALLY IMPACTED FASTLY'S BUSINESS UP THROUGH AUGUST 5TH, NONE AT ALL. IT'S SIMPLY A RISK THAT HAD NOT YET MATERIALIZED.

BUT BY THE TIME AUGUST COMES AROUND, THE RISK PROFILE HAD CHANGED, SO FASTLY DID WHAT A PRUDENT, TRANSPARENT COMPANY WOULD DO.  THEY THEN TOLD INVESTORS THAT THE RISK HAD CHANGED AND THEY AUGMENTED THE RISK DISCLOSURES.

NOW, TO BE CLEAR, FASTLY DID NOT HAVE AN INDEPENDENT DUTY TO DO THAT, EVEN IN THE MIDDLE OF THE YEAR.  BUT THEY CHOSE TO DO THAT SO THAT INVESTORS COULD FULLY UNDERSTAND THE RISK THAT FACED THE COMPANY.

NOW, PLAINTIFF POINTS TO A CUSTOMER LIST AND SAYS THAT FASTLY SHOULD HAVE DISCLOSED TIKTOK.

NOW, I BELIEVE THAT PLAINTIFF IS REFERRING TO PARAGRAPH 9 IN THE COMPLAINT, WHICH REPRODUCES WHAT LOOKS LIKE A PAGE FROM A SLIDE DECK.

NOW, TO BE CLEAR, THE INFORMATION THAT PLAINTIFF PROVIDED RIGHT NOW IN ARGUMENT IS NOT IN THE COMPLAINT ANYWHERE.  THE COMPLAINT DOESN'T IDENTIFY THE SOURCE OF THAT DOCUMENT, WHAT IT

PURPORTS TO REPRESENT, OR EVEN THE DATE OF THE DOCUMENT.  NONE OF THAT IS ALLEGED IN THE COMPLAINT.

BUT EVEN IF IT WAS, IT WOULDN'T MATTER.  YOU LOOK AT RIGEL, AND WHAT THE NINTH CIRCUIT SAID THERE, THE COMPANY DISCLOSED KEY RISKS FROM ITS RHEUMATOID ARTHRITIS TRIAL, KEY RISKS.  IT WASN'T PURPORTING TO DISCLOSE ALL RISKS.

SO, TOO, HERE.  TO THE EXTENT THAT FASTLY DISCLOSED TO INVESTORS WHO SOME OF ITS CUSTOMERS WERE, IT WASN'T PURPORTING TO DISCLOSE THEM ALL, OR EVEN THE LARGEST ONES.  AND SO THAT ARGUMENT FALLS FLAT.

WITH RESPECT TO AUGUST, YOUR HONOR, I INVITE THE COURT TO REVISIT THE NINTH CIRCUIT'S OPINION IN TESLA.  IT WILL BE CLEAR THAT THE AUGUST STATEMENTS ARE FORWARD LOOKING.  THE ASSUMPTIONS UNDERLYING FORWARD-LOOKING STATEMENTS, EVEN IF THEY PURPORT TO REPRESENT CURRENT CONDITIONS, ARE PROTECTED UNDER THE SAFE HARBOR, AND THE NINTH CIRCUIT REITERATED THAT IN TESLA.

AND FINALLY, WITH RESPECT TO SCIENTER, PLAINTIFFS REALLY DO SEEM TO BE RELYING ON THE SO-CALLED CORROBORATIONS INFERENCE.

BUT LET'S LOOK CAREFULLY AT WHAT THE ALLEGATION THERE IS, THAT FASTLY SHOULD HAVE KNOWN WHAT THE U.S. GOVERNMENT WAS DOING ON THE REGULATORY FRONT, WHAT TIKTOK WAS DOING IN TERMS OF ITS TRAFFIC.

THERE IS NOT A SINGLE CASE IN THE NINTH CIRCUIT, YOUR

HONOR, THAT APPLIES THE CORROBORATIONS INFERENCE TO IMPUTE TO DEFENDANTS INFORMATION THAT IS NOT KNOWN WITHIN THE COMPANY.

THERE'S NO ALLEGATION THAT THE COMPANY HAD ANY SPECIFIC INFORMATION ABOUT WHAT THE U.S. GOVERNMENT WAS GOING TO DO WITH CHINA TRADE REGULATION.  THERE'S NO ALLEGATION IN THE COMPLAINT THAT FASTLY KNEW WHAT TIKTOK WAS DOING, WAS PLANNING TO DO WITH RESPECT TO ITS TRAFFIC, NONE AT ALL.

AND TO USE THE CORE OPERATIONS INFERENCE TO IMPUTE TO A COMPANY MANAGEMENT INFORMATION THAT IS INHERENTLY OUTSIDE THE COMPANY IS NOT SUPPORTED BY THE CASE LAW AND I THINK, YOUR HONOR, WOULD BE DANGEROUS PRECEDENT.

WITH THAT, WE SUBMIT ON THE PAPERS.

THE COURT:  ALL RIGHT.

THANK YOU.  THE MATTER STANDS SUBMITTED.

MS. SANTAMARIA:  THANK YOU, YOUR HONOR.

MS. LARGENT:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.

(THE PROCEEDINGS WERE CONCLUDED AT 2:29 P.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED:  DECEMBER 6, 2021